34 P.(2d) 865

## CITY OF ROSWELL v. LEVERS et ux.

### No. 3912.

Supreme Court of New Mexico.

May 8, 1934.

Rehearing Denied June 25, 1934.

H. C. Buchly, of Roswell, and W. A. Keleher, A. H. McLeod, and T. E. Jones, all of Albuquerque, for appellant.

C. R. Brice, of Roswell, for cross-appellants.

Fred E. Wilson, of Albuquerque (William A. Brophy, of Albuquerque, on the brief), amici curiæ.

WATSON, Chief Justice.

The city of Roswell, as assignee of paving certificates of liability, sues to foreclose its lien for the sums due from the defendants according to the terms of the certificates. From a judgment for less than the amount claimed by plaintiff and more than the amount admitted by defendants, both parties have appealed.

The certificates represent the amounts of the several special paving assessments here involved, declare liens therefor, declare the same due and payable in ten equal annual installments, with interest at 6 per cent. per annum, payable semiannually, and further provide: " * * * .That the failure to pay any installment, whether of principal or interest, when due, shall cause the whole of the unpaid principal to become due and payable immediately, and the whole amount of the unpaid principal and accrued interest shall thereafter draw interest at the rate of 1% per month or fraction of a month, until the day of sale."

It is this higher rate of interest after default, generally referred to as a penalty, that is here in question. It is authorized by the paving ordinance. But defendants con-

tend, and it was held below, that it is not authorized by the statute. So holding, the trial court limited the city's recovery to the principal of installments due and 6 per cent. interest. Against this he refused to permit a set-off of so-called penalties which the defendants had paid under protest. Hence the two appeals. The city will be herein referred to as the appellant, and the defendants as the cross-appellants.

Is the ordinance valid as to the penalties?

The "provisional order" paving statute in force when these certificates of liability were issued, was Laws 1903, c. 42 (1915 Code, §§ 3665-3671), as amended by Laws 1919, c. 152. It has since been amended, and in its present form appears as Comp. St. 1929, § 90-1212, et seq.

These three provisions at once come into question:

(1) "The ordinance levying said assessment shall prescribe when the same shall become due and delinquent and the rate of interest payable thereon." Laws 1903, c. 42, § 5, as amended by Laws 1919, c. 152, § 3.

(2) "The amount so assessed shall be a lien upon such lot or parcel of land from the time of such assessment, and the said governing body shall have power likewise to provide for the time and terms of payment of such assessments and the rate of interest upon deferred payments thereof, which rate shall not exceed eight per cent per annum. * * *" Laws 1903, c. 42, § 6, as amended by Laws 1919, c. 152, § 4.

(3) "Such liens shall bear interest at the rate of eight per cent. per annum from the date of the filing thereof until paid. * * *" Laws 1903, c. 42, § 7. Code 1915, § 3671. Comp. St. 1929, § 90-1218.

These three provisions, detached from context and legislative history, are confusing. The second is relied on by the cross-appellants as prohibiting the imposition of more than 8 per cent. interest upon deferred payments. The first is relied on by appellants as applicable to deferred payments only after they become delinquent, and as leaving the municipal board free to impose any rate of interest from the date of delinquency.

The third is not mentioned by counsel. Whether it was repealed by implication in 1919 or still has a place in the statute, we do not pause to consider. We mention it only as showing that, according to the original act, the lien of the assessment bore interest at a fixed rate of 8 per cent., no matter how long delinquent.

The terms of the first and second provisions are so different as strongly to suggest that they do not relate to the same subject-matter. Appellant so urges. But if the distinction is between assessments or payments merely deferred, and those delinquent, as appellant contends, the language of the two provisions is ill-chosen to express it. We have sought a more reasonable and satisfactory explanation of the seeming contradiction. We find it in the history of the statute.

Prior to 1919, there existed, side by side, two independent cumulative statutes, each complete in itself, governing the matter of street improvement by special assessment for benefits; the act of 1903, with which we are here concerned, embracing the so-called provisional order plan of proceeding, and the act of 1913 (Laws 1913, c. 22, Code 1915, § 3672 et seq., Comp. St. 1929, § 90-1219 et seq.) embracing the so-called petition plan. We so held in Ellis v. New Mexico Construction Co., 27 N. M. 312, 201 P. 487. The two still stand side by side in their present forms in Comp. St. 1929, c. 90, art. 12.

The original provisional order plan was simple. After letting the contract for the improvement, the municipal board assessed "to each lot or parcel of land abutting upon such street * * * its proportionate share * * *" of the cost. Section 5 (Laws 1903, c. 42). The amount so assessed became a lien upon the property immediately. If not paid within thirty days after completion and acceptance of the improvement, the clerk was to file a claim of lien for record. Section 6. The liens bore interest at 8 per cent. from the date of filing *until paid.* Section 7.

The petition plan was more elaborate. The 1919 Legislature, to perfect the provisional order plan, borrowed largely from the petition plan, and particularly three features of it; the assessment of railroad property occupying the street, the splitting of assessments on abutting lots into payments, and the issuance by the municipality of assignable certificates of liability.

By reproducing sections 5 and 6 as they appear after amendment, the legislative process will be best made to appear.

"Sec. 5. After the making of such contract, the said city council or board of trustees, shall determine what portion of such work shall be paid by such abutting property, and the owners thereof, and shall assess to each lot or parcel of land abutting upon such street or streets, alley or alleys, or part thereof, so to be improved, its proportionate share of said total amount. *In case of the improvement of any street except as otherwise provided herein, the cost of the improvement of each street intersection, except the share to be paid by street or other railway companies, shall be assessed upon all the frontage of the street to be improved, and on the intersecting streets within a distance of one-half block in each direction from such intersection, in the proportion that the frontage of each piece of real estate on the street improved or on any intersecting street, or on both within said distance bears to the total frontage of all real estate similarly situated; and the cost of each alley intersection shall be assessed upon all of the real estate in the same block in proportion to the frontage on the street improved; Provided, that in the case of lots or parcels of irregular shape or of less than the regular length, the governing body shall be clothed with full authority to determine what property should be assessed for the costs of improving such lots or parcels, and to make equitable assessments against such property as shall have been determined to be benefitted by the improvement of the street or streets, alley or alleys,*

abutted on by such lots of irregular shapes or sizes. The governing body of any municipality shall have power to assess against the owner or owners of any railroad or street railroad occupying or abutting any highway ordered to be improved as aforesaid, the whole cost of the improvements between or under the rails and tracks of said railroad or street railroad, and the two feet on each side of said track or tracks, and shall have power by ordinance to levy a special assessment upon said railroad or street railroad and its roadbed, ties, rails, fixtures, chattels, rights and franchises, which shall constitute a lien thereon, superior to any other lien or claim, except state, county and municipal taxes, and which may be enforced either by sale of said property in the manner provided here, or by suit against the owner. The ordinance levying said assessment shall prescribe when the same shall become due and delinquent and the rate of interest payable thereon.

"Sec. 6. The amount so assessed shall be a lien upon such lot or parcel of land from the time of such assessment, *and the said governing body shall have power likewise to provide for the time and terms of payment of such assessments and the rate of interest upon deferred payments thereof, which rate shall not exceed eight per cent per annum, and to fix a lien upon such property and declare such assessments to be a personal liability of the owner or owners of such abutting property. Such governing body shall have power to issue or cause to be issued, in the name of the city, assignable certificates declaring the liability of such owner or owners and their property for the payments of such assessment and to fix the terms and conditions of such certificates. The certificates shall accurately describe the property covered by the assessment.*

"If any such certificate shall recite that the proceedings with reference to making such improvements have been regularly had in compliance with law and that all prerequisites to the fixing of the assessment lien against the property described therein, and the personal liability evidenced thereby have been performed, such recitals shall be prima facie evidence of the facts so recited. And it shall be the duty of the city clerk of said city, or the recorder of the town or village, within thirty days after the completion and acceptance of the work, to make out, sign, attest with the seal of said city, and file for record in the office of the County Clerk of the county in which said city, town or village is located, a claim of lien for the amount due and assessed against each lot and parcel of land, and all purchases, mortgages or incumbrances of such lot or parcel of land shall take the same subject to such lien. Such lien when delinquent shall have the effect of a mortgage and may be foreclosed in the method now provided by statute for the foreclosure of mortgages on real estate." Laws 1919, c. 152, §§ 3, 4.

It will be observed that original section 5 was preserved intact. Then comes amendatory matter not derived from the petition plan statute, prescribing the front foot rule of assessment for abutting lots, with a proviso as to lots of irregular shape. This we have italicized to distinguish it. Then comes the matter of railroad assessments. It is seen

to be section 5 of the petition plan statute without substantial change.

The amended section 6 will be seen to start in the language of original section 6. Then, commencing with the italics, we find the language of section 6 of the petition plan statute, incorporating the matter of deferred payments, interest, personal liability, assignable certificates, etc. Then, after the italics, the language of the original section 6 is resumed, though slightly modified.

Now, leaving the provisional order plan statute for the moment, and going to the petition plan statute, we find the identical provisions as to interest here in controversy. But, in their original setting, they are not troublesome. The one plainly relates to the special assessment the governing body may impose on railroads occupying the street; the other as plainly relates to the special assessment on abutting lots.

The confusion in the amended provisional order plan statute, results from interpolating the new subject-matter into section 5, destroying the original continuity of sections 5 and 6. It is too plain, however, to be doubted that the Legislature intended the amended provisional order plan, with respect to railroad assessments, interest rate, deferred payments, assignable certificates, etc., to be the same as the petition plan. The correct meaning will be discovered if the last part of section 5, supra, following the italics, be considered purely parenthetical, or as a separate section, as it was in the petition plan statute.

We thus find ourselves in agreement with appellant that the first and second provisions do not cover the same subject-matter. But we cannot admit its contention that the subject-matter of the first provision is assessments "due and delinquent," as distinguished from assessments or payments merely deferred. Its subject-matter is assessments of railroad property. The antecedent of "said assessment," in the first provision, is the special railroad assessment. The antecedent of "amount so assessed," in the second provision, is the assessment "to each lot or parcel * * * abutting, * * *" just as it was in the original act.

The power to impose the penalties not being found in the paving statute itself, we pass to the alternative proposition that it "is both necessarily implied from the powers granted, and likewise essential to the declared purpose." The argument here appears to be largely one of convenience.

It is pointed out that in 1923 (chapter 133) the Legislature extended the provisional order paving scheme by giving authority to the municipality to issue negotiable coupon bonds in an amount not exceeding the total levies; a provision which we upheld in Hodges v. City of Roswell, 31 N. M. 384, 247 P. 310, 314, and by which we considered that the city became a "central collecting and distributing agency."

It is then asserted that there is a necessary loss in collection, so that there will be a deficit in the account from which the bond interest is to be paid. It is argued: "If a property owner pays an installment of his assessment at any time, the interest on the amount so paid ceases from the date of pay-

ment. It takes from one to four months for a municipality to accumulate sufficient principal payments to retire a single bond, the smallest denomination of which is $500. During the period in which the principal sum is being accumulated to retire a bond the interest on the outstanding bond keeps running, whereas, the interest on the respective payments ceases from the respective dates of payment. Consequently there is a lag between the interest collected from the property owners and the interest payable out on the bonds to the bondholders. If interest at 1% a month cannot be charged the owners who are delinquent in their payments, no paving fund in the State of New Mexico will be sufficient to pay out the principal and interest of the paving bonds in full. This deficiency is inherent in the statutory method of financing. It is self-evident and it is an incontrovertible fact." The argument is not persuasive.

In the first place, while the aggregate of the bonds must not exceed the aggregate of the assessments, nor the bond interest rate exceed the rate limited for the deferred payments of assessments, it does not follow that the bonds may not be less, either in principal or interest. If it could be argued that the aggregate of the bond issue and the aggregate of the assessments must be the same, a matter unnecessary now to decide, it clearly cannot be maintained that the interest rate of the bonds may not be less than that of the deferred payments of the assessments. We must assume that, in making the city the collecting agent, and in leaving the maximum interest rate 8 per cent. on deferred payments,

the Legislature considered that it left room to finance the project.

In the second place the ordinance here in question was not passed under authority of the 1923 act.

Some reliance is placed by appellant upon Comp. St. 1929, §§ 90-402, 90-901, authorizing passage of all ordinances proper to the exercise of municipal powers, enforceable by limited fines and penalties. In this connection City of Roswell v. Jacoby, 21 N. M. 702, 158 P. 419, and Denver City Ry. Co. v. City of Denver, 21 Colo. 350, 41 P. 826, 29 L. R. A. 608, 52 Am. St. Rep. 239, are cited.

We conclude that these general provisions are not applicable. The ordinance here in question stands upon special statutory authority, and the statute itself specifies the means of enforcement. It fixes a lien on the property which may be foreclosed as a mortgage. It authorizes interest on deferred payments which may be less but not more than 8 per cent.

We are thus brought to the conclusion that the court did not err as against appellant, and to the consequent necessity of determining whether it erred as against cross-appellants. Are payments of so-called penalties made under protest recoverable by way of counterclaim or set-off?

We are not called upon now to consider whether the penalties heretofore exacted from cross-appellants would have been recoverable in an independent suit. For present purposes we may accept the negative view of

the learned trial judge. In the present case, cross-appellants have been brought into equity, where it is demanded that the amount of their liability be adjudged and their property sold to satisfy it. They ask only that in the accounting of liability they have credit for what has previously been exacted in excess of their liability. Every equitable principle supports their claim. The doctrine of set-off originated and has always been favored in equity. In such a case as this it is merely to apply the maxim that he who seeks equity must do equity.

It is no doubt true that the relation of taxpayer and public is such that taxes voluntarily paid cannot be recovered in the absence of an enabling statute, and that taxes are not ordinarily either the subject or the object of set-off, as against other claims. Nor do we question that special assessments are levied under the taxing power of the state. Nevertheless, we do not consider that we are here dealing with the ordinary relation between taxpayer and public. It is freely premised by counsel, both for appellant and amici curiæ, that the statute of 1919 contemplated payment for the improvement with the assignable certificates of liability authorized, made equivalent to mortgages. It is even suggested by counsel for appellant that the city may have acquired these certificates at a discount.

So, while the assessments were made under the taxing power, the Legislature has seen fit to give the original certificate holders the status of mortgagees. Their assignees must have the same status. The city's reve-nue and resources were not originally involved. If they are now involved by the city having become purchaser for value, it is because of an independent financial operation voluntarily entered into by the city, to which cross-appellants were not parties. The relation of mortgagor and mortgagee has not changed.

We find nothing in the principles or authorities brought to our attention by appellant or by amici curiæ in derogation of the simple proposition presented by cross-appellants, which we deem sound and applicable. We consider therefore that there was error in disallowing the claimed set-off.

The judgment will be reversed. The cause will be remanded, with the direction to enter new judgment conforming to our rulings herein. Appellant should bear the costs in both courts. It is so ordered.

On Motion for Rehearing.

The motion for rehearing is on these grounds:

"1. That the court erred in restricting appellant to an interest charge of 6% when the statute, chapter 152, Session Laws of 1919, permits a charge of 8% per annum.

"2. That the court erred in holding as a matter of law that cross-appellants should be allowed a set-off for penalties already paid under protest."

The first of these propositions is now presented for the first time. The judgment was not excepted to on that ground. It is not among the points relied on for reversal.

On the contrary, appellant stated in its opening brief: "The sole question raised by this appeal, so far as the appellant is concerned, is whether or not the City of Roswell could legally provide for the imposition of a penalty for failure on the part of property owners to pay paving assessments when they became due." Well-established principles of review preclude consideration of the proposition at this time.

On the second proposition, if we erred at all, we think it was in following appellant's counsel in considering the credit demand as a set-off or counterclaim. The credit is for payments made on the very assessment sought to be realized upon. Before there could be any relief, the amount remaining unpaid must be determined. The obligation or liability, even though not personal, is "the very foundation of the right to foreclose." Young v. Vail, 29 N. M. 324, loc. cit. 353, 222 P. 912, 918, 34 A. L. R. 980. The defense of payment or part payment was of course open to the cross-appellants; and that without reference to or reliance upon the principles of set-off or counterclaim. Appellant was entitled to the foreclosure of its lien after the amount had been judicially established. The amount necessarily is the original assessment, with lawful interest, less payments made. That is really all this question amounts to. Appellant clouded the issue by invoking the inapplicable general principle that a suit to recover or enforce a tax is not subject to set-off or counterclaim.

The motion for rehearing may stand denied.

HUDSPETH, J., and OWEN, District Judge, concur.

SADLER, BICKLEY, and ZINN, JJ., did not participate.