116 P.2d 812

**ALTMAN v. KILBURN et al.**

No. 4569.

Supreme Court of New Mexico.

May 17, 1941.

Rehearing Denied Sept. 22, 1941.

Bate Bond, of Clayton, and Seth & Montgomery, of Santa Fe, for appellants.

W. A. Keleher and A. H. McLeod, both of Albuquerque (Maurice Sanchez, K. Gill Shaffer, R. F. Deacon Arledge, Sam Dazzo, H. Leslie Williams, M. Ralph Brown, Mar-

ron & Wood, D. A. Macpherson, Jr., Robert Hoath LaFollette, and Benjamin Osuna, all of Albuquerque, Frazier & Quantius, of Roswell, and Simms, Modrall & Seymour and John F. Simms, Jr., all of Albuquerque, on rehearing only), amici curiae, for appellants.

Adolf J. Krehbiel, of Clayton, for appellee.

C. R. McIntosh, Arthur Livingston, H. A. Kiker, Manuel A. Sanchez, and Anthony J. Albert, all of Santa Fe, Joseph L. Dailey and Waldo H. Rogers, both of Albuquerque (George E. McDevitt, of Gallup, Ross L. Malone, Jr., of Roswell, E. G. Shannon, of Las Cruces, C. R. Anderson, of Carlsbad, L. L. Skarda, of Clovis, Allan D. Walker, of Alamogordo, Neil B. Watson, of Artesia, and David S. Bonem, of Tucumcari, on rehearing only), amici curiae, for appellee.

MABRY, Justice.

There is involved here the question whether the New Mexico statute of limitations has run against street paving certificate or bond obligations issued by the town of Clayton.

Appellee, plaintiff below, filed his complaint seeking foreclosure of certain paving liens represented by paving certificates or bonds, issued by the said town, of which certificates or bonds he was the owner and holder. Appellants, defendants below, as owners of some of the abutting lots sought to be foreclosed, answered setting up, among other defenses, the controlling one that the causes of action sued upon were barred by the statute of limitations. The parties will hereafter be designated as plaintiff and defendants.

Plaintiff demurred to the answer, the demurrer was sustained, and judgment of foreclosure was entered against defendants. The appeal is from this judgment upon the demurrer.

The complaint contains two causes of action, both based upon paving certificates or bonds issued upon assessments against certain property of defendants. The two causes of action affect property against which like special assessments were made, though at different times and under different ordinances. For the purpose of this case the distinction between the two causes of action is of no moment, the question being one of appraising the paving lien, the ordinance, and the statute authorizing it, in relation to our general statutes of limitation.

The complaint shows that under the ordinances the assessments levied against the property might, at the option of the property owner, be paid, as is usual, in ten equal annual installments, with interest; that for nearly six years there had been default in the payment of any such annual installments.

This lien upon the property so improved by the paving was established by the conventional provisional order method, whereby assessments of benefits were laid upon the property by ordinance, the statutory lien thus created and certificates or bonds issued for the purpose of securing the

funds to pay for the improvement. Such certificates or bonds are discharged only by money realized from the assessments collected.

The ordinance in question contained the following provision: "Failure to pay any installment whether of principal or interest, when due, shall cause the whole of the unpaid principal to become due and payable immediately and the whole amount of the unpaid principal and accrued interest shall thereafter draw interest at the rate of one per centum per month or fraction of a month, until the day of sale, but at any time prior to the day of the sale, the owner may pay the amount of all unpaid installments, with interest at one per centum per month, or fraction of a month, on the unpaid installments, and all penalties accrued, and shall thereupon be restored to the right thereafter to pay in installments in the same manner as if default had not been suffered."

Defendants make and rely upon the following points in their challenge to the court's ruling upon their demurrer and its holding the liens good as against their plea of the statute of limitations: (a) that on default in the payment of any installment of the paving liens the entire unpaid balance thereof became due and the cause of action of plaintiff thereupon accrued; and (b) that plaintiff's cause of action is barred either by the six or four year general statute of limitations.

Upon the question of the acceleration of the indebtedness, defendants point to the language of the ordinance authorizing the assessments for the improvements and the bonds issued thereupon as hereinbefore set out, urging that, since the acceleration of the indebtedness upon default of any payment to become due and payable does not rest upon the option of the City or any holder of any paving certificate, the entire unpaid balance upon such default automatically becomes immediately due and payable. Defendants cite and rely upon Buss v. Kemp Lumber Co., 23 N.M. 567, 170 P. 54, L.R.A.1918C, 1015 and Beebe v. Fouse, 27 N.M. 194, 199 P. 364, as authority for their position. The court, in these two cases, defendants urge, expressly repudiated the idea for which plaintiff contends, that this language of the acceleration clause was for the benefit of the creditor, the City or its assignee, who had an option or election in the matter.

Plaintiff would distinguish the situations presented in both the Buss v. Kemp Lumber Co. and the Beebe v. Fouse cases, supra, from that found here. He points to what he terms extraordinary provisions found in the ordinance here under consideration, viz., (a) the penalty provision, and (b) the restoration provision, and relies upon this distinction in urging that the acceleration provision is solely for the benefit of the municipality, and contends that Roswell v. Levers, 38 N.M. 419, 34 P.2d 865, holding the penalty imposed invalid, does not weaken the strength of his argument. We are not dealing with the tax levying power of the town in its

governmental capacity, plaintiff contends. Amici curiae upon one brief also argue strenuously for a distinction between the facts involved in the two cases above cited and the situation presented here.

■ We see nothing in the case before us to distinguish it to the extent that the rule applied by us in Buss v. Kemp Lumber Co., supra, would not likewise apply here. We hold, therefore, that, under this acceleration clause, the entire indebtedness becomes due and payable upon default in the payment of any installment, without the necessity of an exercise of any option to so declare.

If any statute of limitation applies—and this is the principal point in the case— is it the four or six year statute? Sections 83-103 and 83-104 of the N.M.Comp. Laws 1929, our general limitation statute, read:

"83-103. Notes—Written instruments— Judgments of courts not of record. Those founded upon any bond, promissory note, bill of exchange or other contract in writing, or upon any judgment of any court not of record, within six years."

"83-104. Accounts—Unwritten contracts—Torts—Frauds—General provision. Those founded upon accounts and unwritten contracts; those brought for injuries to property or for the conversion of personal property or for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified within four years."

It is clear that suit was not brought upon the bonds in question within time to avoid the defense of either the four or six year term provided by such statute, if in fact the indebtedness here involved under the circumstances of the case can be defeated by such statute.

■ Plaintiff contends that the six year statute of limitation does not control for the principal reason that this is not a contract in writing and the indebtedness does not come within the terms of the statute under any designation. This, he urges, is an action based upon an improvement assessment lien, imposed under the taxing power of the state, which plaintiff seeks to foreclose, and is not an action upon contract; that the certificate or bond is merely evidence of the indebtedness or lien, and is not the foundation of it. Weggs v. Kreugel, 28 N.M. 24, 205 P. 730. In this plaintiff is correct. And, he argues against the applicability of the four year statute for the reason that such improvement tax liens are not there in specified; and further, that if it could be said the act might have applied at the time of its enactment and until 1929, that since then the enactment of Section 90-1217, N.M.Comp.Laws 1929 (Chap. 118, Laws of 1929), which had to do with assessments for such improvement and fixing the lien thereof, gave the status of perpetuity to the validity of such liens; and that since the latter act is a specific statute dealing with the subject of improvement assessment liens, such statute

must prevail over a general statute on the subject of limitation of actions.

We would find no difficulty in holding that the four year statute of limitation, which includes "all other actions not herein otherwise provided for", would cover an action of this character, provided other considerations to be hereinafter discussed are not controlling. As was said in the case of Knoxville v. Gervin, 169 Tenn. 532, 89 S.W.2d 348, 351, 103 A.L.R. 877: "'All other cases not expressly provided for' establishes a bar to all suits not specifically mentioned * * *."

The specific act of 1929 referred to (Chap. 118, Laws 1929), provides: "The amount so assessed shall be a lien upon such lot or parcel of land from the time of such assessment * * * which shall be on a parity with the tax lien of general taxes, and no sale of such property to enforce any general tax or other lien shall extinguish the *perpetual* lien of such assessment." (Emphasis ours.)

Clearly, if these special paving assessments are "taxes", as plaintiff contends, and the municipality acts in a governmental, rather than in a corporate, capacity in assessing such and creating the liens therefore, then, we would say, such liens are created and collected as a governmental function of the municipality, and the tax, or assessment, in this respect, partakes of the nature of a general tax, though it is of course not one, and that no general statute of limitation could affect such obligations and liens. This would be true aside from the other point, also relied upon by plaintiff, that a "perpetual" lien is actually given by the statute authorizing such assessments. Sec. 90-1217, N.M.Comp.Laws 1929.

We know that if the municipality is here exercising a governmental function in improving its streets and thoroughfares, as distinguished from a purely corporate function, then a different rule as to the applicability of the statute of limitation applies. See 17 R.C.L., Sec. 347, page 974, "Limitation of Actions"; 37 C.J., Sec. 32, page 715, "Limitation of Actions".

Was the municipality, then, exercising a governmental function in laying the assessments in question? It is clear that we find a sharp division of authority when we come to answering this question. It is true that the cases often rest upon dissimilar statutes, but a somewhat troublesome and perplexing diversity of authority exists nevertheless. Notes in 103 A.L.R. 877-891.

We know that although the assessment levied against the property improved and presumably benefited is sustainable upon the theory and basis of benefits accruing to such property, and yet there must be present also a public purpose to be served; otherwise such tax or assessment could not be sustained. "It is a well settled principal of constitutional law that no tax can be levied except for the purpose of raising money which is to be expended for a public use." 26 R. C.L., p. 41, par. 26, "Taxation." "Taxes

cannot be imposed except for public purpose. This is elementary and applies to taxes by municipal corporations as well as other taxes." 5 McQuillen Municipal Corporations, par. 2372. See 26 R.C.L. p. 46, par. 29, "Taxation", for a definition of public use and citation of authorities. In 25 R.C.L. par. 1, pages 79–82, under "Special or Local Assessments", we find a helpful discussion of the history and nature of assessment' liens and their relation to the question of taxes. We find again in 26 R.C.L. par. 22, page 38, "Taxation", this statement of the general rule: "Taxes on property include (1) general taxes laid on all property or on all the property of a certain class located within a specified territory, for the purpose of defraying the public expenses of that territory; (2) special assessments, laid on the property specially benefited by a local improvement in proportion to the benefit, for the purpose of defraying the cost of the improvement."

We said in State, etc. v. District Court of McKinley County et al., 41 N.M. 658, 73 P.2d 333, 336, 113 A.L.R. 746: "Nor is there disagreement on the proposition that in initiating the paving program, appraising benefits, and levying the assessments against abutting property, the town of Gallup was acting in a *governmental* capacity. We have held that the power to levy a special or local assessment is essentially a branch of the taxing power. City of Albuquerque v. City Electric Co., 32 N.M. 401, 258 P. 574; City of Roswell v. Bateman, 20 N.M. 77, 146 P. 950,

L.R.A.1917D, 365, Ann.Cas.1918D, 426; City of Roswell v. Levers, 38 N.M. 419, 34 P. (2d) 865. See State ex rel. Ackerman v. City of Carlsbad, 39 N.M. 352, 47 P. (2d) 865 and Gray v. City of Santa Fe [10 Cir.] 89 F. 2d 406, where similar plans of financing were before the courts." (emphasis ours.)

We find almost universal support for the following rule stated in 25 R.C.L. 85, par. 3: "Notwithstanding the distinctions made between local assessments and general taxes, the laying of special or local assessments is generally recognized as an exercise of the taxing power, rather than the police power or the right of eminent domain, though there were in earlier times several dissentients from this view."

We have also said that "special assessments are levied under the taxing power of the state." City of Roswell v. Levers, 38 N.M. 419, 34 P.2d 865, 869. And, in Roswell v. Bateman, 20 N.M. 77, 146 P. 950, 952, L.R.A.1917D, 365, Ann.Cas.1918D, 426, quoted with approval language from Franch v. Barber Asphalt Paving Co., 181 U.S. 324, 21 S.Ct. 625, 45 L.Ed. 879, to the effect that " * * * the authority to require the property specifically benefited to bear the expense of local improvements is a branch of the taxing power, or included within it. * * *" And, we have said that: "Such special assessments are quasi taxes and are laid to enable the discharge of some of the functions of government. The power to impose them is related to the taxing power."

Walton v. City of Portales, 42 N.M. 433, 436, 81 P.2d 58, 60.

In Hagerman v. Territory, 11 N.M. 156, 161, 66 P. 526, we said: "and it is well settled that the plea of the statute of limitations is no defense to those actions by such corporation involving public rights, such as taxation, unless the statute expressly so provides. [Citing Dillon, Municipal Corporation, Sec. 533, and other authorities.] And, as we have already observed, our statute contains no such provision."

It is suggested that in nothing we have heretofore said in any case was it under circumstances whereby we·were called upon to directly analyze and distinguish the dual character of the taxing power of municipalities. It will be noticed that in the Levers case, supra, we did, in a way, observe a distinction between taxes levied for support of the general government and those assessed for special improvements when we held that property owners were entitled to set-off penalty and interest paid under protest. We there said: "It is no doubt true that the relation of taxpayer and public is such that taxes voluntarily paid cannot be recovered in the absence of an enabling statute, and that taxes are not ordinarily either the subject or the object of set-off, as against other claims. Nor do we question that special assessments are levied under the taxing power of the state. *Nevertheless, we do not consider that we are here dealing with the ordinary relation between taxpayer and public."* (Emphasis ours)

In the case of Staley v. Medford, D.C. Or., 8 F.2d 314, 315, the court, in discussing the applicability of the general statute of limitation as applied to "all taxes", held that the statute did not ·apply to assessments for local improvements in cities and towns. Such special assessments "are not taxes levied upon the properties designated by the act, nor within the sense and purpose thereof. They are special assessments authorized by the municipality, and not in pursuance of the general system provided for the levy and collection of taxes." A like distinction is made in the City of Cisco v. Varner et al., Tex.Civ.App., 8 S.W.2d 311, and affirmed in, Tex.Com. App., 16 S.W.2d 265. The court there had under consideration the Texas statute, Vernon's Ann.Civ.St. art. 7298, which provides that no delinquent taxpayer may plead or rely upon "any statute of limitations by way of defense against the payment of any taxes due from him or her either to the state, or any county, city or town."

In holding this statute inapplicable to special assessments for improvement purposes, the court said: "So far as we have been able to ascertain, wherever the question has been presented, such assessments have been held not to be a tax within the meaning of the statute of limitation fixing the time for enforcing the collection of taxes. 2 Page & Jones on Taxation by Assessments, p. 1849, § 1164; City of Hartford v. Mechanics' Savings Bank, 79 Conn.

38, 63 A. 658; Gould v. Mayor, etc., of City of Baltimore, 59 Md. 378; City of Galveston v. Guaranty Trust Co., of N. Y. supra [5 Cir., 107 F. 325]."

But, let us examine further our own commitments upon the subject. This court has, in a number of cases, affecting irrigation assessments, distinguished such assessments from taxes. We said in Lake Arthur D. D. v. Field, 27 N.M. 183, 199 P. 112, in holding special assessments for such improvements on state lands not to be a tax in violation of Sec. 3 of Art. VIII of the N. M. Constitution: "Specific assessment on property for improvements, based upon benefits, the cost of which is assessed against the property, is not a tax within the constitutional sense."

We used the following language in the case of In re Proposed Middle Rio Grande Conservancy District, 31 N.M. 188, 242 P. 683, 688: "There is a marked difference between general taxation and special assessments for local objects, and the word, 'tax' may be used in a contract or statute so as not to embrace within its meaning local or special taxes, although both kinds of taxation derive their authority from the general taxing power."

Justices Bickley and Watson in their special concurring opinion in Davy v. McNeill et al., 31 N.M. 7, 42, 240 P. 482, 497, quoted with approval Cooley on Taxation, 4th Ed., as follows:

"While in a general sense the term 'taxes' includes every burden that may be lawfully laid upon citizens by virtue of the tax-ing power, yet all burdens imposed in the exercise of the power are not taxes.

"For instance, special assessments, although an exercise of the taxing power, are not taxes, so-called taxes are often not taxes within the legal definition of the term. Taxes are the enforced proportional contributions from persons and property, levied by the state by virtue of its sovereignty for the support of government and for all public needs."

And they there employed with approval this further quotation from State ex rel. Johnson v. Chicago, etc., Co., 195 Mo. 228, 241, 93 S.W. 784, 787, 113 Am.St.Rep. 661: "The term 'special taxes,' as applied to the charging of the cost of the improvement of city streets against abutting property, is not technically correct. Such charges are special benefits and not taxes in any sense of the word. If they were taxes, they could not, generally, be enforced, because the amount would make the total tax exceed the limitation prescribed by the Constitution."

We reaffirmed what we had theretofore said about such special assessment not being a tax, in Gutierrez v. Middle Rio Grande Conservancy District, 34 N.M. 346, 282 P. 1, 70 A.L.R. 1261, and in Waltom v. City of Portales, 42 N.M. 433, 81 P.2d 58, we describe paving assessment as "quasi-taxes".

It might clarify somewhat the confusion which appellee senses as having arisen from some language we have used in earlier cases, particularly the case of State

ex rel. Lynch v. District Court of McKinley County, supra, when we say, as we now do, although in levying these paving assessments the municipality was acting in a governmental *capacity* nevertheless such assessments are not levied for governmental *purposes,* and are, therefore, not taxes. The municipality exercises a governmental *function* in levying the tax (for otherwise involuntary payment of such assessments could not be exacted), but it is not for a governmental *purpose.*

We see nothing in the Lynch case, supra, which commits us to a holding contrary to that now proposed. The language used and relied upon by appellee here was not necessary to a decision, and it is clear that counsel conceded the correctness and applicability of the definition accepted and there employed by Mr. Justice Sadler without considering the consequences likely to thereafter flow from its unclarified use. It is obvious that neither counsel considered the point, for they could not have done so without discovering that the almost unanimous authority was against them— if the statement, contrary to our appraisal of it, was to be taken to mean that such special assessments are taxes in the general acceptance of the term.

In view of what we have said upon the subject and the general distinction which most courts make between "taxes" and "special assessments", it is clear, also, that Sec. 141-715, N.M. Stat.Ann.1929 Comp., providing that suits for the collection of taxes or for the foreclosure of tax liens shall be barred if not brought within ten years from and after the date of delinquency of such taxes, does not apply to special improvement assessments; so there can be no reliance upon this ten years statute which applies to general taxes.

Appellee attaches much force to the language hereinbefore quoted from Chap. 118 of the Laws of 1929 (Sec. 90-1217, N.M. Stat.Ann.Comp.1929), providing that "no sale of such property to enforce any general tax or other lien shall extinguish the perpetual lien of such assessment". He contends that this statute, though not as clear as it might be in defining and making such lien perpetual in fact, lends additional weight to his argument that the legislature did not intend that any limitation should apply to paving lien obligations. In the first place, it may be said, the statute does not directly and definitely confer upon these obligations any status of perpetuity. And, in the next place, appellee misconceives the meaning of the term "perpetual lien" as used there. In the case of City of Albuquerque v. Middle Rio Grande Conservancy District, 45 N.M. 313, 115 P.2d 66, recently decided, we had an occasion to deal with this term as it applied to assessments for paving improvements, and we there held contrary to this contention. We there said: "In other words, it is reasonable to conclude that all the legislature intended by employing the phrase 'perpetual lien', in view of the context, was that the assessment lien shall be perpetual as against current and future recurring ad valorem tax liens."

And, at the same time, we spoke of the paucity of definitions of the phrase "perpetual lien", but quoted with approval the following: "'Perpetual lien,' as used in a statute declaring taxes to be a perpetual lien is to be taken as meaning a primary lien, overriding all others, and not as continuing delinquent taxes in force against real estate after the statute has barred a right of action thereon. D'Gette v. Sheldon, 27 Neb. 829, 44 N.W. 30, 32." 32 Words & Phrases, Permanent Edition, p. 172. Appellee is in error in his appraisal of the term as used in our statute.

In the case of Knoxville v. Gervin, 169 Tenn. 532, 89 S.W.2d 348, annotated in 103 A.L.R. 877, there was presented almost the identical question with which we are concerned. It was there held that the statute of limitation does run against such special assessments since the assessments imposed are not taxes. We believe that this case and others achieving a like result are clearly fortified with the better reason.

We hold that the four year statute of limitation applies as to all causes of action involved herein, and that the court erred in sustaining the demurrer to defendants' answer and giving judgment for plaintiff. The cause will be reversed with instructions to the trial court to overrule the demurrer and to proceed thereafter in a manner not inconsistent with this opinion.

BICKLEY, J., and EUGENE D. LUJAN and IRWIN S. MOISE, District Judges, concur.

BRICE, C. J., and ZINN, J., did not participate.

SADLER, Justice (dissenting).

The prevailing opinion holds: (1) That the acceleration clause in the ordinance automatically and without notice matures the entire indebtedness upon default in the payment of a paving installment; and (2) that there is in New Mexico a statute of limitations applicable to a suit to foreclose the lien of the paving assessment here sued upon. In my opinion, the majority reach an erroneous conclusion as to both questions decided. These conclusions will be discussed in the order mentioned.

The construction given the acceleration clause of the ordinance is based upon the earlier decision of this court in Buss v. Kemp Lumber Company, 23 N.M. 567, 170 P. 54, L.R.A.1918C, 1015. The cases are distinguishable. In the Buss case we determined the effect of an acceleration clause in a mortgage note providing that in case of default in the payment of any installment of interest, "then the whole principal sum shall become due and collectable". We there were seeking to arrive at the true intention of the parties to a private contract voluntarily agreed upon. Resting our conclusion on the fundamental consideration that the parties themselves made the contract, we held that no election was necessary by the holder of the note; that default automatically matured the entire indebtedness; and that the statute of limitations began to run on the cause of action upon the mere occurrence of the default.

The situation is different here. We are dealing with the language of an ordinance in the drafting of which only one party, the city, had any part. Furthermore, the proper construction of the acceleration clause contained in the note in the Buss case was uninfluenced by other language of the instrument, whereas here we have the penalty provision and the reinstatement clause both in the same section of the ordinance as the acceleration clause, each of which merits some consideration.

In the later case of Beebe v. Fouse, 27 N.M. 194, 199 P. 364, 366, decided by this court, the matter was presented under a differently worded acceleration clause. There the language appeared in a conditional sales contract merely providing that after default, the first party "may enter upon the premises" and retake possession of certain property. We observed a distinction between that case and Buss v. Kemp Lumber Company, supra. We said: "Under the contract in the case at bar the appellee *had the right, if he so elected,* to enter upon the premises where the property was found and to retake possession thereof, without previous demand or notice. But this right was in abeyance until appellee elected to exercise it. Consequently, the statute did not begin to run until such election was made." (Italics mine.)

And so it is, or should be, as to the acceleration clause here involved. Our decision in the Buss case is against the weight of authority, even under language similar to that there construed. See Keene Five-Cent Savings Bank v. Reid, 8 Cir., 123 F. 221, 224, certiorari denied, 191 U.S. 567, 24 S.Ct. 841, 48 L.Ed. 305, where the court said: "The effect of such clauses as the one in question has frequently been a subject for judicial consideration, and, while the decisions are not entirely harmonious, yet the decided weight of reason and authority is in favor of the view that such provisions are not self-operative; that they are for the benefit of the creditor, and intended to give him, on grounds of convenience, the right to treat the entire debt as matured, if an installment of interest is not paid as and when it should be, or if the taxes on the mortgaged premises are not paid pursuant to agreement. The great majority of the cases treat such provisions, when contained in mortgages, as designed to further constrain and stimulate the debtor to meet his engagements promptly, and to arm the creditor with a right in the nature of a right to declare a forfeiture or to exact a penalty, which he may or may not exercise, and as a right which the courts will never regard as having been exercised by the creditor, or as having any effect upon the period of maturity specified in a note or bond, without some affirmative action on his part, such as a notification to the debtor, by a suit or otherwise, that on account of the default he elects to treat the entire indebtedness as due."

If the matter were one of first impression, we might do well to pause and ponder before following the minority doctrine.

Still, it calls for no narrowing of the holding in that case to sustain appellee's contention on this point in the case at bar. The appellee merely argues that there should be no extension of the doctrine of the Buss case and, with this contention, I fully agree.

Two results follow default by virtue of the acceleration clause: First, the entire debt is matured; and, second, a penalty in the rate of interest applicable is started. Can it be said that results so obvious were not the purpose and object of the clause? I think not. Both results are penal in their nature. And both must have been intended. The fact that this court in City of Roswell v. Levers, 38 N.M. 419, 34 P.2d 865, held municipalities without statutory authority to impose penalty interest at the rate of 1% per month, has no bearing on the question of the intent with which the penalty was imposed. The invalidity of such action had not then been declared, and, as declared, was simply that the ordinance imposed a penalty in excess of 8% per annum, the maximum authorized by the controlling statute. Clearly, the ordinance discloses an intent to exact a penalty. It is the intent with which the city imposed it that we now are concerned.

Then, we have the reinstatement or restoration clause to consider. This clause is found in section 3 of each ordinance, along with the penalty provision. It follows the latter and reads: " * * * but at any time prior to the day of the sale, the owner may pay the amount of all unpaid installments, with interest at one per centum per month, or fraction of a month, on the unpaid installments, and all penalties accrued, and shall thereupon be restored to the right thereafter to pay in installments in the same manner as if default had not been suffered."

The presence of this clause very well may be considered as having an important bearing on the question of whether an option is to be implied in connection with the acceleration clause because of the consequences to follow where the property owner avails himself of the reinstatement clause. To illustrate, let us assume that the entire indebtedness automatically matures by reason of the first default. The city or town under the authority of section 5 of the ordinance advertises the property for sale "at the same time and in the same manner as the sale of property in the Village for delinquent general taxes;" or (if same be permissible, in view of the fact that each ordinance expressly authorizes foreclosure and sale only in the manner first indicated), recovers judgment in foreclosure for the full amount of principal and interest plus penalties and advertises the property for sale. At any time before the appointed day of sale, the delinquent property owner may pay off the defaulted installments, interest, penalties, etc., and thereupon become "restored to the right thereafter to pay in installments in the same manner as if default had not been suffered".

It will be noted that the reinstatement clause does not impose as a condition to its exercise that the property owner shall pay attorney's fees which may have been incurred by the city in connection with a sale about to be conducted at the same time property is sold in the city for general taxes, or by a bondholder in a judicial foreclosure as mortgages are foreclosed (the latter authorized by L. 1923, c. 133, but omitted as an express means of foreclosure provided by the ordinance). Either the city or a bondholder might very well pause and consider whether it or he would wish to treat the entire indebtedness due for purposes of sale, or of suit and sale, when the defaulting owner could defeat the whole procedure and reclaim his right to pay in installments by paying merely the installments in default plus accrued interest, penalties and costs, leaving the lienholder liable for any attorney's fees incurred. At least, the lienholder might very much prefer to elect in each instance whether to risk this hazard rather than to have same automatically forced upon him. Furthermore, if, as the majority hold (and erroneously, I think), there is a statute of limitations applicable to foreclosure of paving assessment liens, the statute automatically begins to run on the entire indebtedness—a result which the city or bondholder very earnestly might wish to avoid and even deem themselves safe from, not having elected to avail themselves of the implied option to declare the entire amount due.

In view of the considerations mentioned, I think we should not extend the doctrine of Buss v. Kemp Lumber Co. In the case at bar, since the intent and a manifest object of the acceleration clause is to start a penalty, an option should be implied. The clause is for the lienholder's benefit. It is harsh and in the nature of a forfeiture. Equity abhors both penalties and forfeitures. The parties are in a court of equity. The one for whose benefit the clause was incorporated in the ordinance is here denying that he claims the benefit of accelerated maturity. We should not force same upon him by the construction given the language employed. See Annotation in 113 A.L.R. 1168; Town of Cheraw v. Turnage, 184 S.C. 76, 191 S.E. 831.

The majority hold the four year statute of limitations (1929 Comp., § 83-104) is applicable to the foreclosure of the lien of paving assessments. In my opinion they are wrong in this conclusion. It may avoid some confusion at the outset to state that I make no contention these paving assessments are "taxes", in the generally understood sense. Ordinarily, when we speak of taxes, we think of general taxes levied upon an ad valorem basis. Paving assessments are not that kind of taxes. No contention is made that they are. Neither are excise taxes of that kind. The state may be obligated to pay debentures issued to anticipate the proceeds of a special fund to arise from imposition of an excise tax. Thus a debt is created but it is not necessarily a "debt" in the constitutional sense,

requiring an approving vote of the electorate since it is not to be repaid from ad valorem taxation. State v. Connelly, 39 N.M. 312, 46 P.2d 1097, 1106, 100 A.L.R. 878. But it is a debt nevertheless.

The sales tax, the use tax, the severance tax, the succession tax and other forms of excise taxation are not subject to challenge as "taxes" levied by governmental authority and for a public purpose. And, yet, they are not "taxes" in the ordinary sense of the word. In State v. Connelly, supra, we said: "The original article 8 of the Constitution on 'Taxation and Revenue' has been replaced. The original section 1 provided: 'The rates of taxation shall be equal and uniform upon all subjects of taxation.' This court, without hesitation, held this provision applicable 'only to taxes, in the proper sense of the word, levied with the object of raising revenue for general purposes, and not to such as are an extraordinary and exceptional kind,' and that it was 'to be restricted to taxes on property, as distinguished from such as are levied on occupations, business, or franchises, and as distinguished also from exactions imposed in the exercise of the police power rather than that of taxation.' State v. Ingalls, 18 N.M. 211, 135 P. 1177, 1180."

Thus we see that there are "debts" and "constitutional debts" and there are "taxes" (general taxes) and "special taxes". An excise tax is truly a tax levied by the state or some political subdivision thereof in a sovereign capacity. Nevertheless, it was held not to be a tax in the constitutional sense within Const., Art. 8, § 1, as originally adopted, requiring that rates of taxation should be equal and uniform upon all subjects of taxation. State v. Ingalls, 18 N.M. 211, 135 P. 1177. But the excise is still a tax.

And so it is with paving assessments. They are not taxes in the ordinary sense at all but they are taxes in the sense that the sovereign authority to impose them resides in the state's taxing power. This fact has been affirmed by this court on more than one occasion. City of Roswell v. Bateman, 20 N.M. 77, 146 P. 950, L.R.A. 1917B, 365, Ann.Cas.1918B, 426; City of Albuquerque v. City Electric Company, 32 N.M. 401, 258 P. 574; City of Roswell v. Levers, 38 N.M. 419, 34 P.2d 865; State ex rel. Ackerman v. City of Carlsbad, 39 N.M. 352, 47 P.2d 865; State ex rel. Lynch v. District Court, 41 N.M. 658, 73 P.2d 333, 113 A.L.R. 746; Waltom v. City of Portales, 42 N.M. 433, 81 P.2d 58.

In City of Albuquerque v. City Electric Co., supra, the question was one of priority between a prior recorded mortgage to secure bonds of approximately two hundred thousand dollars and the lien of paving assessments. This court sustained the priority of the paving lien and, among other things, said [32 N.M. 401, 258 P. 575]:

"In the first place, the power to levy a special or local assessment is essentially a branch of the taxing power. 1 Page &

Jones, Taxation by Assessment, § 8; 2 Cooley, Taxation (3rd Ed.) p. 1153 et seq. * * *

"The fact that the law creating the priority of the tax was enacted after the mortgage was executed seems to be immaterial. The owner of the property and the mortgage alike are at all times subject to the taxing power of the state. Wabash East R. Co. v. East Lake, etc., Commissioners, 134 Ill. 384, 25 N.E. 781, 10 L.R.A. 285; Seattle v. Hill, 14 Wash. 487, 45 P. 17, 35 L.R. A. 372; Provident Institution, etc. v. Jersey City, 113 U.S. 506, 5 S.Ct. 612, 28 L.Ed. 1102."

The prevailing opinion, while conceding that the imposition of the tax or assessment is an exercise of the state's sovereign taxing power, withdraws from the proceeding any shade of sovereignty after levy of the assessment and makes of the transaction one by the municipality in its purely corporate, private or proprietory capacity, subject only to the legal incidents consequent on such a status.

As author of the opinion in State ex rel. Lynch v. District Court, supra, where we were asked to prohibit the district court of McKinley County from appointing a receiver to collect delinquent assessments, I recall that vigorous argument to this very effect was presented by able counsel for the respondent judge and his court. We rejected it and made permanent an alternative writ restraining the respondents from appointing a receiver to collect the delinquent assessments. And upon what

ground? *Upon the ground that the district court was without jurisdiction to appoint a receiver to collect "taxes"*—special taxes or assessments, to be sure, and not general taxes as to which, of course, the want of jurisdiction would be just as obvious—but "taxes", nevertheless, and of the very kind here involved, viz., paving assessments. True, we mentioned the fact that the controlling ordinance and statute having provided a complete scheme for initiating the paving program and for raising the money to defray the cost thereof, the mode of enforcement prescribed afforded the only remedy. But it can hardly be said that an erroneous conclusion by the trial court in this respect would be outside its jurisdiction and thus have afforded the basis for prohibition. But, even so, the decision then would rest upon two grounds instead of one only and become stare decisis as to both.

In the Lynch case we reviewed certain federal court decisions involving the power of a court of equity to appoint a receiver to collect public improvement assessments, namely, Street Grading District No. 60 of Little Rock v. Hagadorn, 8 Cir., 186 F. 451, certiorari denied, 223 U.S. 721, 32 S.Ct. 524, 56 L.Ed. 630, and Road Improvement District No. 7 v. Guardian Savings & Trust Company, 8 Cir., 298 F. 272, reversed on certiorari, 267 U.S. 1, 45 S.Ct. 201, 69 L.Ed. 487. In the Hagadorn case, the court rested its decision primarily on two former decisions of the United States Supreme Court, Rees v. City of Watertown, 19 Wall.

107, 22 L.Ed. 72, and Thompson v. Allen County, 115 U.S. 550, 6 S.Ct. 140, 29 L.Ed. 472. Both involved equity's power to appoint an officer—the court's marshall in the Rees case and a receiver in the Thompson case—to levy and collect ad valorem taxes. The court held that the United States District Court was without jurisdiction to appoint a receiver in equity to collect delinquent street improvement assessments. Equity is without power, said the court, to collect taxes and no distinction in this behalf was noted between general (ad valorem) taxes and special street improvement assessments as they happened to be in the Hagadorn case. That our decision in the Lynch case rests fundamentally on this same concept is made obvious by the following excerpts from the opinion; we said [41 N.M. 658, 73 P.2d 339, 113 A.L.R. 746]:

"Equity is as much wanting in jurisdiction to appoint a receiver to perform the duties of the governing body in collecting the tax as to assess the same. * * *

"While it is true under the statute that upon failure or refusal of the governing body to sell property for default in the payment of an assessment the holder of any bond may sue to enforce the lien, *this does not detract from the governmental nature of the duty performed by the governing body when it moves to collect.* It is a receiver to perform the duty of the town as trustee, not to exercise the privilege conferred by the statute on a bondholder, that is sought by plaintiff in the suit below." (Italics mine.)

The prevailing opinion erroneously appraises the Lynch case. The language: "Nor is there disagreement on the proposition that in initiating the paving program, appraising benefits, and levying the assessments against abutting property, the town of Gallup was acting in a governmental capacity." is quoted as indicating our acceptance, without deciding, what counsel for both parties agreed upon. But we followed immediately by citing several of our own decisions abundantly supporting the correctness of what the parties were said to have agreed upon. This concession of counsel goes no farther than the concession of the majority in the prevailing opinion. They, too, agree that the power to levy these special assessments is essentially a branch of the state's sovereign taxing power. What they do not agree and is not embraced in the concession of the parties quoted, supra, is that in collecting the "tax", or "assessment" if one prefers, the municipality still acts in a governmental capacity. Indeed, that it does not so act was the chief contention of counsel for the respondents in the Lynch case. Following the Hagadorn decision, and others cited in the opinion in the Lynch case, we held that it does so act.

If the court upon further consideration wishes to overrule the Lynch case, well and good. I entertain no pride of opinion in its authorship, although far from persuaded

that it is wrong. But let not what it decides be misunderstood or misconceived.

In another case, following the Lynch case, Waltom v. City of Portales, 42 N.M. 433, 81 P.2d 58, 59, we again recognized that the city or town is acting in a governmental capacity in carrying out these street improvements. We said: "Our cities and towns have ever since 1884 been clothed with the power to construct sewers and improve streets. Streets in municipalities were declared by the Legislature to be public property. Sometimes the city streets are used as a part of state highways and the cities and towns required to construct and maintain such portions of the public highway as run through such municipalities whether on their streets or otherwise. 'El Camino Real' is a familiar illustration of this. *These municipal duties may be discharged by means of revenues derived from general taxes* or out of proceeds derived from the levy of special assessments against property adjacent to the improvements. To the extent of funds derived from special assessments the burden of general taxes is proportionately decreased. *Such special assessments are quasi taxes and are laid to enable the discharge of some of the functions of government. The power to impose them is related to the taxing power.*" (Italics mine.)

It will be observed we stated that "these municipal duties [of improving streets] may be discharged by means of revenues derived from general taxes * * *". See 1929 Comp., § 90-1222. See, also, § 90-1216,

as amended by L.1939, c. 88, § 2. By what authority may the municipality dedicate the proceeds of general taxation to pay all or a portion of the cost of paving its streets, except in the performance of a governmental function? And, if half the cost of a particular paving program is paid from the proceeds of general taxation and half from special assessments against abutting property, is the city's act in levying, as well as collecting, the special benefit assessments any less governmental in character than its act of levying and *collecting* by general taxation the portion of the cost to be borne by the city?

The prevailing opinion says that: "* * * although in levying these paving assessments the municipality was acting in a governmental *capacity,* nevertheless such assessments are not levied for governmental *purposes,* and are, therefore, not taxes". If, in levying and collecting general taxes to pave streets the city raises money for "governmental purposes", the purpose being exactly the same, why is it any the less so when the city raises it by enforced levies against the property in the form of special benefit assessments? It is an involuntary contribution by the property owner measured by an enforced lien on his property to pave the street it abuts. This meets my definition of a tax in the form of a special imposition. It also met this court's definition of a tax as expressed by Mr. Justice Roberts in Eccles, Artesian Well Supervisor v. Will, 23 N.M. 623, 170 P. 748, 749, L.R.A.1918C, 1022, where the court said: "A special assessment for benefits *is*

*a form of tax,* and is referable to the power of taxation (Page & Jones, Taxation by Assessment, § 5), while an assessment (so called for want of a better name), levied to reimburse the public corporation for the cost of performing some act which the owner of the realty assessed is bound by law to perform, but which he omits or refuses to do, does not rest upon any theory of benefits conferred, and *is not necessarily a form of taxation.* It constitutes an exercise by the Legislature of the police power as distinct from the taxing power. Page & Jones, Taxation by Assessment, §§ 9 and 89." (Italics mine.)

It seems agreed that the paving liens securing the bonds here sued upon were filed under the authority of L.1923, c. 133. Section 4 of Ordinance No. 156 and the same section of Ordinance No. 165 are both almost in the exact language of the last paragraph but one of this act. The only portion of said section relating to foreclosure of the paving lien reads as follows: "In case any such lot or parcel of land so assessed is delinquent in the payment of such assessment or any installment of principal or interest, the Board of Trustees shall cause *such delinquent property to be sold at the same time and in the same manner as the sale of property in the Village for delinquent general taxes,* and at such sale said property shall be bought in by the Village if there be no other purchaser therefor." (Italics mine.)

This language follows exactly the language of the statute. Although plaintiff here has followed an alternative method of foreclosure given by *the statute* to any bondholder in the event the city fails or refuses to cause delinquent property to be sold as directed, nevertheless, the city's right to sell for delinquency "at the same time and in the same manner as the sale of property in such municipality for delinquent general taxes", cannot be questioned. Thus does the legislature emphasize the character of the city's act in collecting these assessments as governmental. It truly reflects the legislative thought that the city in performing the duty thus imposed upon it will be engaged in the business of collecting taxes and renders available to the city the machinery for collecting the state's taxes as well as the advantage of being able to expose delinquent properties for sale to bidders attracted to the state's tax sales.

The fact that L.1923, c. 133, under which the ordinances in question were adopted, authorizes foreclosure by bondholders in event the city fails or neglects to sell delinquent properties, is not persuasive that the assessments are not taxes of a special kind, or that the city is not exercising a governmental function when it moves to collect them. State ex rel. Lynch v. District Court, supra. The legislature later (1929 Comp., § 141-710, L.1929, c. 114, § 10) authorized private "persons, firms or corporations" holding tax sale certificates for general taxes to foreclose the same as mortgages are foreclosed. The general tax for delinquency in the payment of which the certificate was issued did not become

any the less "taxes" merely because of the privilege conferred of foreclosing it as mortgages are foreclosed. Neither does this option change the fundamental character of these special benefit taxes.

If these public improvement assessments are embraced in the general category of "taxes", then, as I understand, the majority agree that we have no statute of limitations applicable to foreclosure of the liens securing them. With this concession and feeling that it has been demonstrated that they are a form of tax—a special tax—the citation of authority may seem unnecessary. But, see People ex rel. McCrea v. Atchison, 95 Ill. 452; Shepard v. People ex rel. Raymond, 200 Ill. 508, 65 N.E. 1068; Fisk v. Keokuk, 144 Iowa 187, 122 N.W. 896; Town of Asheboro v. Morris, 212 N. C. 331, 193 S.E. 424; 2 Page & Jones, Taxation by Assessment, §§ 1163 and 1164, and Annotation in 103 A.L.R. 885.

It is admitted that we have in New Mexico no statute of limitations providing a special period of time within which a special assessment (a form of tax, Roberts, J., in Eccles v. Will, supra) may be enforced. The statute of limitations applicable to the enforcement of the lien of general taxes does not apply. Staley v. Medford, D.C., 8 F.2d 314; Bradford v. City of Huntsville, 215 Ala. 591, 112 So. 200. Cf. City of Hartford v. Mechanics Savings Bank, 79 Conn. 38, 63 A. 658. And, enforcement is not within the limitations provided by the omnibus provision contained in 1929 Comp., § 83-104. See authorities cited in preceding paragraph. It is well settled that statutes of limitation do not apply to actions in behalf of the state or its political subdivisions such as counties and municipalities acting in governmental capacity, unless the statute expressly so provides or does so by the clearest implication. Hagerman v. Territory, 11 N. M. 156, 66 P. 526, and State v. Roy, 41 N. M. 308, 68 P.2d 162.

I am strongly of the opinion that our state legislature has consciously refrained from enacting a special statute of limitations applicable to benefit assessments for public improvements. Had it done so many years ago, undoubtedly many deserving property owners would have lost their homes through foreclosures which the city or bondholders would have felt themselves compelled to institute. But they indulged in the undoubted (and what until today would have been considered a well-grounded) belief that there was no applicable statute of limitations. The effect of a holding that there is such a statute will be to penalize them for this indulgence. The holders of these obligations have been supported in their belief that there was no applicable statute of limitations by a practical construction given the matter for more than a quarter of a century by the governing bodies and legal staffs of the various municipalities of the state. Although benefit assessments in one form or another have been authorized by the laws of New Mexico for almost a half a century, now and for the first time in the history of this court, we are called upon to

determine whether limitations. statutes are applicable to special benefit assessment liens.

The result announced by the majority on the question of limitations exposes every municipality in the state having paved streets to suits by holders of paving certificates or bonds for claimed breach of the town's or city's duty as trustee to foreclose paving liens on delinquent properties before the right so to do became barred by limitations. The municipalty's position as trustee in the collection of these assessments has been recognized by this court. Hodges v. City of Roswell, 31 N.M. 384, 247 P. 310. See, also, State ex rel. Lynch v. District Court, supra; Gray v. City of Santa Fe, 10 Cir., 89 F.2d 406. Cf. State ex rel. Ackerman v. City of Carlsbad, supra. In 2 Page & Jones on Taxation by Assessment, § 1131, the authors state: "If the city neglects to collect an assessment which it is bound to collect for the benefit of the contractor, it is liable personally therefor * * *."

A consequence likely to follow the holding that there is an applicable statute of limitations is an effort by bondholders to fasten personal liability on the various municipalities over the state having paving for claimed breaches of their duty as trustees to foreclose paving liens within the limitations period for the first time now declared and held applicable. It is common knowledge that the aggregate amount of such delinquencies in the larger towns and cities of the state is of considerable magnitude. Furthermore, if liability exists, any judgment recovered could be enforced through mandatory levies on the property tax rolls. Constitutional and statutory limitations on the rate of taxation might afford no defense to the making of such levies. Cf. Barker, Mayor v. State ex rel. Napoleon, 39 N.M. 434, 49 P.2d 246.

Whether the municipalities would be liable to such actions for damages for breach of trust, if filed, it would, of course, be improper for me to say. Indeed, I entertain no opinion in the matter. Nor do I contend that the existence of this potential liability against our municipalities should control our decision in this case. It may be properly considered, however, on the question of the weight to be given the practical construction of the matter by municipalities and their legal staffs all over the state; also, on the question whether, there being no express limitations provided by statute, we should hold it to have been the legislative intent to include one covering public street improvement assessments under the omnibus clause of the four year statute as a matter of "clearest" or "inescapable" implication.

With due respect to the opinion of the majority, I am unable to concur therein. Accordingly, and for the reasons given, I dissent.

On Motion for Rehearing.

MABRY, Justice.

The appellee has moved for rehearing. A large number of attorneys, under leave

of the court, have appeared as amici curiae. Among them may be found city attorneys of several municipalities in the state, aligning themselves with appellee, in urging that there is no statute of limitations applicable to paving assessments. A goodly number of attorneys, appearing as amici curiae, have aligned themselves with appellant in support of the conclusions reached in the opinion already handed down. Able arguments have been made both in the briefs and at oral argument granted on the motion for rehearing. Counsel and amici curiae are to be commended for the zeal and industry displayed in presenting to us the questions raised by the motion. The public importance of such questions deserves the attention all counsel have given it.

We have fully considered the briefs and arguments but remain unshaken in the conviction that the disposition made of the appeal in our original opinion is correct. The argument that it has been a studied legislative policy over the years, consistently adhered to, to elevate the security of public improvement assessments, is intriguing. Nevertheless, this consideration fails to overcome the reasons put forward in our former opinion to support the holding that the general statute of limitations is applicable to the foreclosure of the statutory paving lien.

Counsel for appellee remind us of language in sections 4 and 5 of bond ordinances 157 and 166, assertedly adopted as companion enactments to Clayton paving ordinances 156 and 165. Ordinances 157 and 166 were not before the trial court when it decided this case. They came before us by virtue of a stipulation signed by counsel for the respective parties under the certificate of the District Clerk of Union County, for such consideration as this court, in its discretion, feels should be accorded them. Sections 4 and 5 of bond ordinances 157 and 166 read as follows:

"Section 4. That if the owners of any parcel of land assessed for the said improvements shall be delinquent in the payment of any assessment installment, or interest due, it shall be the duty of the Village Treasurer to notify such owner in writing that such delinquency exists, and that, if the amount due is not paid within ten days after the date of said notice, the delinquent property will be sold for the payment due thereon.

"Section 5. If the payment or payments due as specified in the next preceding section is or are not paid within the stated time, it shall be the duty of the Board of Trustees, at its own expense, to cause the delinquent property to be sold at the same time and in the same manner as the sale of property in the municipality for delinquent general taxes, in any manner which is now or which may be provided by law."

Our attention is drawn to the language of an Indiana statute (Sec. 10455, Burns' Ann. 1926), involved in Hennessey v. Breed, Elliott & Harrison, 92 Ind.App. 165, 176 N.E. 251, 254, claimed to be similar to the provisions of sections 4 and 5 of the Clayton bond ordinances, the statutory provision reading

as follows: "And provided, further, *That no suit* shall be instituted to collect any unpaid assessment, whether a waiver has been signed or otherwise, until thirty days after default, during which period of grace, such assessment, *or the unpaid instalment thereof*, may be paid to the treasurer without further penalty, *nor shall any such suit be instituted until fifteen days after service of notice upon the delinquent by the owner of such lien or assessment, during which period of grace, such assessment or the unpaid instalment thereof may be paid to the treasurer without further penalty. A notice mailed to the person in whose name said lands are assessed, addressed to such person within said city, shall be deemed a sufficient notice.* * * * In no case shall the attorney's fee exceed the amount of the assessment."

It is to be noted that there is a difference between the language of the Clayton bond ordinances quoted above and the *statutory* provision involved in the Hennessey case last quoted. Whether the language in the ordinances or the language in the statute, if properly before us in this court, would compel a different holding as to the time from which the statute of limitations runs, we decline to intimate. The language of the bond ordinances was not before the district court when it rendered its decision and it is not properly before us. Any expression of views by us at this time on the effect of the same or similar language would be entirely gratuitous.

The motion for rehearing will be denied.

BICKLEY, J., and MOISE and LUJAN, District Judges, concur.

SADLER, Justice (dissenting).

I dissent from the majority's adherence to its holding in the original opinion that the general statute of limitations applies, or was intended to apply, to a suit to foreclose paving certificates. In my opinion, a rehearing should be granted and a contrary result announced.

I agree with the majority that the provisions of bond-ordinances 157 and 166, which were not presented to the trial court but certified to us under a stipulation of counsel, should not be considered in disposing of the appeal here. The effect of the provisions of sections 4 and 5 of such ordinances, quoted in the majority opinion on rehearing, or of other similar statutory or ordinance provisions, is properly reserved by the majority for future consideration in a case calling therefor.