808 P.2d 797 (1991)
LARAMIE COUNTY SCHOOL DISTRICT NUMBER ONE, State of Wyoming, By and Through its duly elected trustees, Richard BROWN, in his official capacity; Gladys Frentheway, in her official capacity; Jean Cotton, in her official capacity; Miles Larowe, in his official capacity; Keith Rounds, in his official capacity; and Sue Hume, in her official capacity, Appellants (Plaintiffs),
v.
Robert G. MUIR and James C. Young, individually and f/d/b/a as Muir and Young Architects, Appellees (Defendants).
No. 90-134.
Supreme Court of Wyoming.
April 9, 1991.
Paul J. Hickey, John Walker, and Elizabeth A. Rinaldo, Legal Intern, Hickey & Evans, Cheyenne, for appellants.
Edwin H. Whitehead and Sue Davidson, P.C., Cheyenne, Bernard L. Trott, Colorado Springs, Colo., for appellee Young.
Tracy J. Copenhaver, Copenhaver, Kath & Kitchen, Powell, for amicus curiae Wyoming School Boards Ass'n.
*798 Before THOMAS, CARDINE, MACY, and GOLDEN, JJ., and LEIMBACK, District Judge.
THOMAS, Justice.
The sole issue presented by this case is whether a statute of limitations in Wyoming serves to bar an action by a school district against a supervising architect employed for a school building construction project. The district court, in effect, ruled that the statute of limitations was a constitutional enactment and that it did foreclose the school district's action premised upon theories of negligence, breach of warranty, and breach of an implied warranty of habitability. The district court also held that the school district was not insulated from the application of the statute of limitations by the doctrine of sovereignty. We reverse the decision of the district court, holding that a school district, as a governmental entity eligible to claim the status of a sovereign, was not foreclosed from its action by the statute of limitations. Because of our ruling in this regard, it is not necessary to consider the question of the constitutionality of the statute.
The appellants, Laramie County School District No. 1 and its duly elected trustees, frame the issues in their brief in this way:
"A. Laramie County School District No. 1, State of Wyoming, is not subject to a statute of limitations set forth in Wyo. Stat. 1-3-111, (1977 Republished Ed.), when it acts in its sovereign capacity in constructing a junior high school building.
"B. Wyo. Stat. § 1-3-111, (1977 Republished Ed.) violates Article 1 § 8 of the Wyoming Constitution."
The appellee, James C. Young, in his Brief of Appellee effectively adopts those same issues, but sets them forth in an opposite mode as follows:
"A. Laramie County School District Number One is subject to a statute of repose set forth in Wyo. Stat. § 1-3-111 (1977 Republished Ed.) as it was not cloaked with the sovereign power of the state in constructing a junior high school building.
"B. Wyo. Stat. § 1-3-111 (1977 Republished Ed.) does not violate Article 1 § 8 of the Wyoming Constitution."
In an amicus curiae brief filed by the Wyoming School Boards Association, the issues articulated by the appellants are adopted.
On July 7, 1972, the Board of Trustees of Laramie County School District No. 1 voted to call a special election for the purpose of increasing the mill levy. A major reason for the enhanced revenue was to construct a new junior high school building to be known as McCormick Junior High School. The record demonstrates it was necessary to replace the old junior high school building because the state fire marshal had issued a report advising the school district that the school building was in violation of the fire code. In addition, the old McCormick Junior High School building had "very little usefulness as an educational facility" and was located on a "woefully inadequate" site that did not allow for any expansion. The issuance of bonds to accomplish this construction project was approved by the voters.
At a meeting held on January 29, 1973, a unanimous vote was cast for a motion to employ the architectural firm of Muir and Young (James C. Young is the appellee) to provide the architectural services necessary for the construction of the new McCormick Junior High School building. A written contract for those architectural services agreed upon between the school district and Muir and Young was executed on March 23, 1973. Construction of the new McCormick Junior High School building began on or about November 20, 1973, and the new building was completed in 1975. It has been occupied by the school district continuously since it was completed.
There were no observable problems attributable to structural flaws in the new school building at first. During the winter of 1983-1984, however, gaps began to appear between the walls and ceilings, and some ceiling tiles fell to the floor. During that same school year, one wall brace sheared from its stabilizing bolts and protruded *799 through the ceiling of the building. During the 1985-86 school year, a canopy walkway deteriorated and began to crack because of structural stress. The school district retained a structural consultant to assist it in dealing with these structural problems. On December 14, 1987, he issued a report concerning the problems with the school building, and the school district undertook the requisite steps to cure these defects. The school district filed its action against the architects in the district court on September 14, 1988. Damages were sought because of the structural problems in the new McCormick Junior High School building. The theories asserted in the complaint for recovery included negligence, breach of contract, and breach of implied warranty of habitability.
Robert G. Muir filed for Chapter 11 bankruptcy on October 17, 1988. The proceedings have been stayed as to him, and he is not a party to this appeal. James C. Young, individually in this action, filed a motion to dismiss the complaint, asserting that the action was barred by the statutes of limitations found in §§ 1-3-105 and 1-3-111, W.S. 1977 (June 1988 Repl.).[1] The parties in this case have focused their arguments on the text of § 1-3-111, but our holding applies with equal force to § 1-3-105. The school district responded to the motion to dismiss by asserting, inter alia, that it was immune from the application of the asserted statutes of limitations because it was acting in a sovereign capacity when it entered into the contract for building the new McCormick Junior High School and, alternatively, that § 1-3-111 is unconstitutional.
On March 23, 1990, the trial court issued its decision letter in which it ruled, in effect, that the school district was not immune from the effect of the statute of limitations and that there was no constitutional defect in § 1-3-111. On April 20, 1990, the trial court dismissed the complaint of the school district.
The school district asserts that it is exempt from the effect of the statute of limitations in this case. Its theory is that a school district acts in its sovereign capacity when it builds, or contracts to have built, a school building because it then is acting in the interest of the public at large. Young's response is that the school district does not *800 enjoy the state's immunity from the application of a statute of limitations and should be held subject to the statute. Young contends that the school district has all the attributes of a private corporation and acts in a proprietary capacity when involved in the construction of a school building.
Our review of the pertinent authority discloses no Wyoming cases addressing this particular point. In the recent case of Richardson Associates and E.W. Allen & Associates, Inc. v. Lincoln-Devore, Inc., 806 P.2d 790, n. 12 (Wyo. 1991), the court mentioned, but did not resolve, an aspect of this question:
"We do not consider the issue in this decision to be whether units of government, other than the state itself, enjoy a statute of limitations preclusion. That subject will be left for other cases in both statutory and common law analysis."
The case alluded to is now before the court.
Neither party to this appeal attempted to argue that the State of Wyoming itself is not exempt from an application of statutes of limitations. Instead, the argument focuses completely on whether a school district shares the immunity of the state in these circumstances. Since we are developing new law in Wyoming, we first will review generally the rule of immunity from statutes of limitations as it applies to the state before resolving the particular issues in this case. The rule finds its genesis in the common law principle "nullum tempus occurrit regi," or "time does not run against the king." The history of this principle is set forth in the early federal case of United States v. Hoar, 26 F.Cas. 329, 329-30 (D.Mass. 1821) (No. 15,373, 2 Mason 311), as follows:
"[I]t may be laid down as a safe proposition, that no statute of limitations has been held to apply to actions brought by the crown, unless there has been an express provision including it. * * * [I]t was ruled in the Case of Magdalen College, 11 Cooke 68, 74b, 1 Rolle, 151 that `the king has a prerogative, quod nullum tempus occurrit regi, and therefore, the general acts of limitation, or of plenarty, shall not extend to him.'"
In United States v. Thompson, 98 U.S. (8 Otto) 486, 25 L.Ed. 194 (1878), the United States Supreme Court later explained how this principle became applicable in a republican form of government:
"The common law fixed no time as to the bringing of actions. Limitations derive their authority from statutes. The king was held never to be included, unless expressly named. No laches was imputable to him. These exemptions were founded upon considerations of public policy. It was deemed important that, while the sovereign was engrossed by the cares and duties of his office, the public should not suffer by the negligence of his servants. `In a representative government, where the people do not and cannot act in a body, where their power is delegated to others, and must of necessity be exercised by them, if exercised at all, the reason for applying these principles is equally cogent.' (Quotation not identified.)
"When the colonies achieved their independence, each one took these prerogatives, which had belonged to the crown; and when the national Constitution was adopted, they were imparted to the new government as incidents of the sovereignty thus created. It is an exception equally applicable to all governments." Thompson, 98 U.S. at 489-90.
In cases decided since Thompson, the federal government has been held not subject to any standards found in state statutes of limitations. This principle has also been applied generally whenever a state brought an action in its sovereign capacity and the defendant interposed the statute of limitations.[2]
The rule has been applied in varying situations in neighboring jurisdictions, and it has been generally held that statutes of limitations do not bar an action by a governmental *801 entity acting in a sovereign capacity to vindicate public rights. Oklahoma City Municipal Improvement Authority v. HTB, Inc., 769 P.2d 131 (Okl. 1988). The right that is asserted must be one belonging to the general public, however. Trimble v. American Savings Life Insurance Company, 152 Ariz. 548, 733 P.2d 1131 (Ariz. App. 1986). The rule invoked and applied in these cases is that, unless the legislature expressly includes governmental bodies as subject to the applicable statute of limitations or those governmental bodies are included within the statute by necessary application, the statute of limitations does not run against the government. Trimble; City of Medford By and Through Medford Water Commission v. Budge-McHugh Supply Company, 91 Or. App. 213, 754 P.2d 607, reh. denied, 306 Or. 661, 763 P.2d 152 (1988); Berkeley Metropolitan District v. Poland, 705 P.2d 1004 (Colo. App. 1985); In re Bogert's Will, 64 N.M. 438, 329 P.2d 1023 (1958).
Some states have avoided the problem completely by expressly including the state within the ambit of their statutes of limitations. People ex rel. Skinner v. Graham, 170 Ill. App.3d 417, 120 Ill.Dec. 612, 524 N.E.2d 642 (1988) (two-year construction defect limitations statute expressly applying to any "body politic" included State Capital Development Board). Other states have resolved the problem by expressly excluding the state from the thrust of the statute of limitations. City of El Paso v. Del Norte Golf and Country Club, Inc., 614 S.W.2d 168 (Tex.Civ.App. 1980), error refused nre (limitations statutes provided that it was not a bar to suits by state or governmental agencies). The statutes of limitations in Wyoming that are relied upon in this case make no reference to the state. We will, in that light, recognize the rule of state immunity from statutes of limitations in Wyoming, in the absence of some express statutory pronouncement. We hold this to be the appropriate and sound principle of common law.
The invocation of that rule, however, does not resolve the question in this case, which is whether this doctrine of the immunity of the state will extend to local governmental agencies in general and to school districts in particular. Young offers several arguments to explain why this immunity should be extended only to the state and not to a school district. He argues first that, had the legislature intended to exempt school districts from the operation of the statute of limitations, it would have expressly provided for that exemption. We will not presume, as Young does, that the legislature must have intended to include school districts because it did not specifically exclude them. "Nullum tempus" is a common law doctrine; statutes of limitations are legislatively created. The legislature must be presumed to have known of the common law doctrine when adopting the statutes of limitations. See Billis v. State, 800 P.2d 401 (Wyo. 1990); Wetering v. Eisele, 682 P.2d 1055 (Wyo. 1984); Matter of Voss' Adoption, 550 P.2d 481 (Wyo. 1976). We hold that had the legislature intended to include school districts within the statutes of limitations, it would have done so by express reference.
Young's next argument is that, although the State of Wyoming may not be bound by a limitations statute unless mentioned in it, the school district is bound because "in the absence of a specific provision [exempting it] in the statutes * * *, actions by municipalities and other governmental subdivisions are not exempted from the operation of general statutes of limitations." 51 Am.Jur.2d Limitation of Actions § 417 at 889-90 (1970). As noted above, the policy reason for excluding the king from the statute of limitations at common law, unless specifically mentioned therein, was that the public should not suffer from the negligence of its servants. Thompson, 98 U.S. at 486. We do not see how one could conclude that the public suffers in any less measure in an instance in which its rights are lost by a subordinate agency of government than it would when the default lies with the state itself. The failure of the legislature to provide school districts with immunity in the statutes of limitations should not bar them from sharing in the state's immunity.
*802 We also reject Young's contention that the doctrine of "nullum tempus" can only apply to agencies with statewide authority. The principal case invoked by Young for this proposition, Ohio Valley Contractors v. Board of Education of Wetzel County, 293 S.E.2d 437 (W. Va. 1982), appeal on remand 391 S.E.2d 891 (1990), is not persuasive. That case involves only the issue of sovereign immunity from suit. Immunity from action is a very different subject from the ability of the sovereign to bring an action after the statute of limitations has run. Oklahoma City, 769 P.2d at 131. This distinction makes the reasoning from Ohio Valley inapt with regard to the issues in this case. For example, the Ohio Valley court mentions the ability of local school boards to buy liability insurance as a reason for refusing to extend immunity from suit to them. Ohio Valley. That rationale has no pertinence with respect to the question of immunity from the application of a statute of limitations.
We are satisfied that the better rule is that immunity from the application of statutes of limitations cannot be limited to the state itself, or even to those state agencies with statewide authority. If a local agency is carrying on a function of protecting public rights that citizens receive under our constitution, or is otherwise fulfilling a traditional function of government, the statute of limitations preclusion should be available.
The mandate in Wyo. Const. art. 7, § 1, that the legislature shall provide for the establishment and maintenance of a complete and uniform system of public instruction, articulates a sovereign function of the state. The method which the legislature has chosen to satisfy the constitutional mandate has been the creation of a state department of education, a state board of education, and local school districts. Wyoming Education Code of 1969, §§ 21-1-101 to XX-XX-XXX W.S. 1977 (July 1986 Repl.). See Washakie County School Dist. No. One v. Herschler, 606 P.2d 310 (Wyo. 1980), cert. denied 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980).
Having addressed the arguments propounded by Young against extending immunity from the application of statutes of limitations to school districts, we are able to identify positive reasons to justify invoking that immunity in cases such as this. Authority on this point from other jurisdictions is divided, but we find more persuasive those cases which have granted immunity from statutes of limitations in similar circumstances. In Rowan County Board of Education v. U.S. Gypsum Co., 87 N.C. App. 106, 359 S.E.2d 814, reh. denied 321 N.C. 298, 362 S.E.2d 782 (1987), the board of education brought an action against an asbestos manufacturer seeking to recover the costs involved in removing asbestos from school buildings. Summary judgment was granted to the defendants on the grounds that the statute of limitations had run and the suit was barred. The court of appeals reversed, stating the rule to be that a political subdivision of the state acts in its governmental capacity while acting on behalf of the State "`"in promoting or protecting the health, safety, security or general welfare of its citizens ..."' Rhodes v. Asheville, 230 N.C. 134, 137, 52 S.E.2d 371, 373 (1949)." Rowan, 359 S.E.2d at 819. Applying that test to the action by the board, the court concluded that:
"* * * [P]laintiff's action to recover lost tax dollars, expended in the preservation and maintenance of school property and necessitated by a potential health hazard to our school personnel and children, is a governmental function exercised in pursuit of a sovereign purpose for the public good on behalf of the State." Rowan, 359 S.E.2d at 819.
The Kansas Court of Appeals reached a similar conclusion in a case in which a school district brought an action against the manufacturer of roofing material whose product, after being installed on the roof of a high school building, proved to be defective. Unified School District No. 490 v. Celotex Corporation, 6 Kan. App.2d 346, 629 P.2d 196 (1981). The manufacturer argued that the action was barred by the Kansas statute of limitations. The Kansas statute of limitations provided that the period *803 of limitations ran explicitly against governmental entities when the case arose out of the performance of a proprietary function. Kan. Stat. Ann. § 60-521 (1983). In ruling in favor of the school district, however, the court stated:
"* * * The construction of a school building is incidental to and a part of the state's overall duty to provide public education for the citizens of the state. * * * The operation of a high school building by a school board is a governmental function." Unified School District No. 490, 629 P.2d at 203.
The Illinois Supreme Court, in Board of Education of City of Chicago v. A, C, and S, Inc., 131 Ill.2d 428, 137 Ill.Dec. 635, 546 N.E.2d 580 (1989), was confronted with an argument that common law immunity should not apply because the school district's interests did not affect the public at large. The court rejected this contention, saying:
"* * * This complaint has alleged, therefore, an interest in the safety of these public buildings and in the safety of a large segment of this State's population which attends the public schools and for the children who will in the future attend these schools. There is also the interest of the parents, faculty, staff and other people who use or will use our public school system. Moreover, unlike `any other property owner,' these buildings are owned by the government, maintained with tax revenue, and used for mandatory classroom attendance as well as for other public functions." A, C, and S, Inc., 137 Ill.Dec. at 656, 546 N.E.2d at 601.
The Illinois court then ruled that school districts could assert common law immunity from the application of the statute of limitations on claims brought by the school districts against suppliers of materials containing asbestos. The case before this court does not involve the hazards of asbestos, but the public interest is equally present in much the same way as the Supreme Court of Illinois found it to be present in A, C, and S, Inc.
The reasoning of the courts in the cases cited above is persuasive in this case. The same factors that motivated those courts in our sister jurisdictions are recognized in Wyoming. We have earlier noted the public duty to provide education as expressed in our state constitution:
"The legislature shall provide for the establishment and maintenance of a complete and uniform system of public instruction, embracing free elementary schools of every needed kind and grade, a university with such technical and professional departments as the public good may require and the means of the state allow, and such other institutions as may be necessary." Wyo. Const. art. 7, § 1.
We recognized the partnership between the state and local authorities in providing for public education in Washakie. In that case, we said, "[t]he matter of providing a school system as a whole and financing it is a responsibility of the legislature." Washakie, 606 P.2d at 337.
We further said that the question of financing the physical facilities necessary to the process of public education is part and parcel of the educational package.[3] We also said in Washakie, 606 P.2d at 333, *804 that "education for the children of Wyoming is a matter of fundamental interest." Public education is a governmental function in Wyoming, and the construction of educational facilities is a component of that function. We are satisfied that a school district that constructs a school building is operating in its sovereign capacity for the public welfare and in the interests of the public generally.
We hold, then, that construction of a public school building by a school district is a sovereign activity and that a suit against a contractor, or more specifically against an architect, for damages arising out of that construction is brought to vindicate public rights. Under the principle, "nullum tempus occurrit regi," the applicable statutes of limitations cannot be invoked to bar the school district from bringing its action to protect the public rights that are presented in this manifestation of sovereign activities. The order of the district court dismissing this case on the ground that the statute of limitations had run must be, and it is, reversed.
The second issue presented by the school district is whether § 1-3-111 violates Wyo. Const. art. 1, § 8. Because we have resolved this case on the premise that statutes of limitations do not bar the action by the School District acting in its sovereign capacity, it is not necessary for us to address the constitutional claim in this case. We do not decide constitutional issues if there is another appropriate ground upon which the case may be decided. Wheeler v. Parker Drilling Co., 803 P.2d 1379 (Wyo. 1991).
Reversed and remanded to the district court for further proceedings according to law.
NOTES
[1] Section 1-3-105, W.S. 1977 (June 1988 Repl.), reads, in pertinent part:

"(a) Civil actions other than for the recovery of real property can only be brought within the following periods after the cause of action accrues:
"(i) Within ten (10) years, an action upon a specialty or any contract, agreement or promise in writing;
"(ii) Within eight (8) years, an action:
"(A) Upon a contract not in writing, either express or implied; or
"(B) Upon liability created by statute other than a forfeiture or penalty;
* * * * * *
"(iv) Within four (4) years, an action for:
* * * * * *
"(C) An injury to the rights of the plaintiff, not arising on contract and not herein enumerated; * * *."
Section 1-3-111, W.S. 1977 (June 1988 Repl.), reads:
"(a) Unless the parties to the contract agree otherwise, no action to recover damages, whether in tort, contract, indemnity or otherwise, shall be brought more than ten (10) years after substantial completion of an improvement to real property, against any person constructing, altering or repairing the improvement, manufacturing or furnishing materials incorporated in the improvement, or performing or furnishing services in the design, planning, surveying, supervision, observation or management of construction, or administration of construction contracts for:
"(i) Any deficiency in the design, planning, supervision, construction, surveying, manufacturing or supplying of materials or observation or management of construction;
"(ii) Injury to any property arising out of any deficiency listed in paragraph (i) of this subsection; or
"(iii) Injury to the person or wrongful death arising out of any deficiency listed in paragraph (i) of this subsection.
"(b) Notwithstanding the provisions of subsection (a) of this section, if an injury to property or person or an injury causing wrongful death occurs during the ninth year after substantial completion of the improvement to real property, an action to recover damages for the injury or wrongful death may be brought within one (1) year after the date on which the injury occurs.
"(c) This section shall not be construed to extend the period for bringing an action allowed by the laws of this state."
[2] We have recognized a similar rule where estoppel is asserted against the state. See State Highway Commission of Wyoming v. Sheridan-Johnson Rural Electrification Association, 784 P.2d 588 (Wyo. 1989).
[3] We are aware of Stoddard v. School District No. 1, Lincoln County, Wyoming, 429 F. Supp. 890 (D.Wyo. 1977), aff'd in part, rev'd in part 590 F.2d 829 (10th Cir.1979), in which the United States District Court held, in a suit brought by a teacher for wrongful dismissal, that Wyoming school districts are not entitled to state sovereign immunity under the Eleventh Amendment to the United States Constitution. That court, in reaching its conclusion, characterized school districts as "more like a county or city than * * * an arm of the state." Stoddard, 429 F. Supp. at 893. The Tenth Circuit Court of Appeals agreed with this characterization. Stoddard, 590 F.2d 829. The Stoddard case was one involving the immunity of a state from suit in the federal courts under the limited provisions of the Eleventh Amendment. Immunity from the application of a statute of limitations was not involved in that case. We are satisfied that immunity from the application of a statute of limitations must, of necessity, have broader parameters than sovereign immunity because depletion of the public treasury can be, and easily is, protected by the purchase of liability insurance, while the loss of a right to recovery because it is barred by a statute of limitations is not similarly protected.