**MOUNTAIN VIEW/EVERGREEN IMPROVEMENT AND SERVICE DISTRICT, an Improvement and Service District formed under the laws of the State of Wyoming, Appellant (Plaintiff),**

v.

**BROOKS WATER AND SEWER DISTRICT, a Water and Sewer District formed under the laws of the State of Wyoming, Appellee (Defendant).**

**MOUNTAIN VIEW/EVERGREEN IMPROVEMENT AND SERVICE DISTRICT, an Improvement and Service District formed under the laws of the State of Wyoming, Appellant (Plaintiff),**

v.

**BROOKS WATER AND SEWER DISTRICT, a Water and Sewer District formed under the laws of the State of Wyoming, Appellee (Defendant).**

**BROOKS WATER & SEWER DISTRICT, Appellant (Plaintiff),**

v.

**MOUNTAIN VIEW/EVERGREEN IMPROVEMENT & SERVICE DISTRICT, Appellee (Defendant).**

Nos. 94–52, 93–193, 93–217.

Supreme Court of Wyoming.

June 13, 1995.

Phillip T. Willoughby, Casper, for Mountain View/Evergreen Improvement and Service Dist.

Bruce N. Willoughby and Todd H. Hambrick of Murane & Bostwick, Casper, for Brooks Water and Sewer Dist.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

The prime issue in these consolidated cases is whether Mountain View/Evergreen Improvement and Service District (Mountain View) can bring an action to recover damages against Brooks Water and Sewer District (Brooks). The trial court ruled Mountain View could not sue Brooks because such an action is barred by the rule promulgated in *Carbon County Sch. District No. 2 v. Wyoming State Hosp.*, 680 P.2d 773 (Wyo.1984). Totally dependent upon the resolution of the primary question are issues relating to the application of the statute of limitations found in WYO.STAT. §§ 1–39–113 and 1–39–114 (1988) and the public policy resolution of the substantive question of liability. In three separate cases, the district court first decided no action would lie; ruled the provisions of WYO.STAT. §§ 1–39–113 and 1–39–114 would apply in any action by Mountain View against Brooks; ruled Mountain View was not protected from the operation of the statute of limitations because of its status as a political subdivision of the state; and Brooks must bear the expense of removing its utilities from public streets when Mountain View proceeded to improve the streets. We distinguish *Carbon County Sch. Dist. No. 2*, and we reverse the decision of the District Court in case No. 94–52. We affirm the rulings of the district court with respect to the application of the statute of limitations in case No. 93–193 and the obligation of Brooks to bear the expense of moving its utilities from the dedicated streets in case No. 93–217.

In the order in which we resolve the three cases, the parties set forth the issues in their briefs in the following ways:

In case No. 94–52 relating to the right of one special improvement district to sue another special improvement district, Mountain View states the issue to be:

1. Did the District Court err in finding and ordering that a suit against Brooks Water and Sewer District by Mountain View/Evergreen Improvement and Service District was barred because both entities are political subdivisions of the State of Wyoming and therefore should be dismissed.

Brooks states the issue in that case in this way:

1. Did the lower court correctly determine that since both parties in this action are political subdivisions of the state, Mtn. View could not sue Brooks for trespass or negligence, and the suit must therefore be dismissed?

In case No. 93–193 concerning the application of the statute of limitations, Mountain View, in its Appellant's Brief, sets forth these issues:

1. Did the District Court err in finding and ordering that a suit against Brooks, a governmental body, was barred if filed more than one (1) year after the first

Notice of Claim, though the two (2) year period in which to make a claim had not run, and the appellant had renewed its claim within the two (2) year period and filed suit within one (1) year after the second supplemental claim?

2. Did the District Court err in dismissing Brooks from the suit though a part of the claim against Brooks was discovered and noticed December 24, 1992 to Brooks less than seven (7) months after the discovery of the injury, and suit was then filed five (5) months after the claim?

3. Did the District Court err in applying the statute of limitations of W.S. §§ 1–39–113 and 114 against Mountain View, a political subdivision of the State?

The counterstatement of the issues in that case by Brooks is:

1. Did the District Court have subject matter jurisdiction in the underlying action?

2. Does the combined effect of W.S. §§ 1–39–113 and 114 allow parties to re-notice claims in subsequent actions after the statute of limitations has already run on the original claims?

3. Is Mountain View, a political subdivision of the state, subject to the statutes of limitations of W.S. §§ 1–39–113 and 114?

4. Does public policy demand strict adherence to the statute of limitations by all parties?

In case No. 93–217, which requires the resolution of the question of substantive liability on the grounds of public policy, Brooks states the only issue as:

1. In this case of first impression in Wyoming, did the lower court apply the correct law in light of the particular facts of this case?

As the appellee in that case, Mountain View offers this statement of the issues after acknowledging the presence of the underlying question of jurisdiction:

1. Did the lower court apply the correct law in dismissing appellant's cause of action? (Appellant agrees with appellee's Statement of the Issues and this is a case of first impression in Wyoming.)

2. Can a governmental entity or subdivision of the State of Wyoming bring suit against the State of Wyoming, its divisions, departments, political subdivisions and/or local governments?

The three cases before the court arise from a common set of facts. There is no real debate among the parties with respect to the material facts. The roadways where Brooks located its water and sewer improvements were dedicated and platted in 1923. Mountain View was formed on January 17, 1989 for the purpose of financing the payment of construction costs for sidewalk, curb, gutter, and street improvements in an unincorporated suburb in Natrona County. Brooks came into existence at some earlier date and, as early as 1963, it had developed water and sewer services in an area which encompassed the Mountain View special improvement district.

When Mountain View began to develop storm sewers, curb, gutter, and sidewalks and pave the roadways, Brooks had to relocate some fire hydrants, valves, and other appurtenances it had placed in the platted roads in the Mountain View district. Later, certain areas in the roads Mountain View had constructed began to subside. Brooks initially excavated, filled, and repaved the road in one area but, thereafter, it declined any responsibility for the damage.

Initially, there were six areas of subsidence. These were repaired, and it appeared there were no additional problems. On November 5, 1991, Mountain View submitted a formal claim to Brooks under the Wyoming Governmental Claims Act. WYO.STAT. §§ 1–39–101 to –120 (1988). Then, in the spring of 1992, an additional six areas of subsidence were discovered and, on December 24, 1992, Mountain View filed a second claim that included the first six areas previously described in the November 5, 1991 claim as well as the six new areas. Still later an additional area of subsidence was discovered and, on April 1, 1993, an action was brought to recover the damages asserted in the first two claims.

About this same time, additional areas of subsidence were found and, ultimately, an additional six areas occurred in the spring of

1993. On April 21, 1993, Mountain View served notice of its claim for the areas included in the first claim, the areas included in the second claim, and the new areas. All of these claims were encompassed in the action filed by Mountain View.

Brooks instituted an action of its own against Mountain View in which it sought to recover for the cost of relocating the fire hydrants, valves, and other appurtenances. The resolution of that litigation was by summary judgment with the trial court ruling Mountain View was within its prerogatives in requiring Brooks to remove the obstructions. The court held Brooks was not entitled to compensation.

In the litigation commenced by Mountain View, there are two developments that were resolved by orders of the district court. In the first of those orders, the court dismissed the action as to the first six areas of subsidence which were included in the claim filed on November 5, 1991. The district court ruled that action was time barred by the provisions of WYO.STAT. § 1–39–114 because it was not commenced within the one-year period after the filing of the claim as required by that statute. It is our understanding, and that of the parties, that this dismissal did not reach those claims which were filed within one year of the filing of the civil action. Subsequently, a third order was entered by the court in which it dismissed all claims by Mountain View, relying upon *Carbon County Sch. Dist. No. 2*.

■ Mountain View and Brooks are special improvement districts organized under the statutes of this state. As special improvement districts, they had the authority to collect revenues for the provision of the services for which they were responsible. The threshold question in dealing with the rulings of the district court is whether the status of Mountain View and Brooks as special improvement districts brings them within the rule articulated in *Carbon County Sch. Dist. No. 2* and its predecessor, *State v. Bd. of County Comm'rs of Johnson County*, 642 P.2d 456 (Wyo.1982). In *Bd. of County Comm'rs of Johnson County*, we ruled Johnson County could not bring an action against the State of Wyoming for fees the county expended for the services of a public defender. In the later case of *Carbon County Sch. Dist. No. 2*, we held a school district could not sue the state hospital for damages caused by an arsonist who previously had been discharged as a patient by the hospital.

The holdings in both these cases are premised on the fact that counties and school districts are not sovereignties but, instead, are political subdivisions of the state. We stated, "[t]hey are part of the state itself. One cannot sue himself." *Carbon County Sch. Dist. No. 2*, 680 P.2d at 774. We earlier said that, because a political subdivision is merely an adjunct to, or an arm of, the state, it cannot commence an action against the state as an "adverse party," because "one cannot have a position adverse to his own position." *Bd. of County Comm'rs of Johnson County*, 642 P.2d at 458.

In a case that involves analogous concepts, *Laramie County Sch. Dist. No. 1 By and Through Brown v. Muir*, 808 P.2d 797, 802 (Wyo.1991), we held the statute of limitations would not bar a school district from pursuing an action against an architect that normally would have been foreclosed by the general statute of limitations:

> We are satisfied that the better rule is that immunity from the application of statutes of limitations cannot be limited to the state itself, or even to those state agencies with statewide authority. If a local agency is carrying on a function of protecting public rights that citizens receive under our constitution, or is otherwise fulfilling a traditional function of government, the statute of limitations preclusion should be available.

■ The rule that can be extrapolated from these cases is that a public entity, authorized by statute and funded from state coffers or other public revenues, which performs functions for the public at large is simply another arm of the state. Because of this affinity to the state, such a subdivision does not have the essential adversarial interests or claims against the state contemplated by a dispute arising between two or more persons. Furthermore, like the state, such a public entity will not be inhibited by the

statute of limitations. The product of this rule as it might apply to the primary issue in this case is that the court has no subject matter jurisdiction to entertain a claim by a political subdivision against the state because there is no *bona fide* controversy between them. This is especially true when any damages awarded to one entity as against the other would have to be paid from one common source, that is, taxes levied upon and collected from taxpayers generally. A common pool for the payment of damages from one entity to another does not fit with an adjudicated damage award based upon an obligation existing "upon one party in favor of the other, the performance of which is refused." *Cantonwine v. Fehling,* 582 P.2d 592, 597 (Wyo.1978) (quoting *Bruner v. Martin,* 76 Kan. 862, 93 P. 165, 166 (1907)).

This case is one brought by one special improvement district against another. Brooks was responsible for developing water and sewer services and Mountain View for developing streets with curb, gutter, sidewalks, and storm sewers. Both were furnishing those services on behalf of the residents in their respective districts, rather than in a governmental capacity. We note the areas of the districts were not coterminous. The area served by Brooks was substantially larger than that served by Mountain View. Assessments levied and collected by the county under the special improvement districts statute were not available for the support of government generally. They were dedicated for special improvements to benefit the property owners in the defined districts.

The status of such entities is explained in analogous cases in Wyoming. In *Associated Enterprises, Inc. v. Toltec Watershed Improvement Dist.,* 490 P.2d 1069, 1070–71 (Wyo.1971), the court said:

> We think it will help to understand the problem here involved if we keep in mind the distinction between governmental and proprietary functions of legal subdivisions. In Wyoming we have always recognized such a distinction in dealing with the matter of tort liability of municipal corporations.

> \* \* \* \* \* \*

Without reviewing the watershed improvement districts law section by section, we can state categorically that the functions of such districts are proprietary and in the nature of special or private corporation purposes. The districts do not exercise delegated sovereign powers for the benefit of people generally.

We need to make it clear that we are not saying a watershed improvement district is not a governmental entity. We merely say its functions are primarily proprietary and not governmental.

In *In re Bridger Valley Conservancy Dist.,* 401 P.2d 289, 292 (Wyo.1965), we said:

> Insofar as appellants' reference to the project's being tax supported, it should be noted that this court has previously announced its views concerning irrigation districts by saying:

> " \* \* \* The Legislature has seen fit to cause such districts to be created upon petition of a certain number of people owning or holding lands therein, and upon a hearing, after due notice, upon such petition by the district court. The method of thus establishing the districts is, we think, constitutional. \* \* \*

> " \* \* \* The exactions authorized to be made by such districts may, in a broad sense, be termed taxes, but they are distinguishable therefrom, for they are levied for local benefits to be spread on the property in the districts in proportion to the peculiar advantages accruing to each parcel therein from the improvement made. Whether in the form of special assessments or in the form of taxes, they are essentially assessments for local benefits, and not levied for general governmental purposes, as are the taxes contemplated in the constitutional provisions mentioned [including Art. 1, § 28, Wyo. Const.] \* \* \*." *Sullivan v. Blakesley,* 35 Wyo. 73, 246 P. 918, 922.

Persuasive authority from other jurisdictions supports this resolution. Early decisions exist in which a city sued property owners in an improvement district for nonpayment for street improvements constructed by the city. *City of Knoxville v. Gervin,*

169 Tenn. 532, 89 S.W.2d 348 (1936); *Altman v. Kilburn,* 45 N.M. 453, 116 P.2d 812 (1941). In those cases, the cities were held bound by the applicable statute of limitations rather than being able to file suit at any time under the principle that a statute of limitations does not run against the state or its subdivisions. *See Muir.*

In *City of Knoxville,* 89 S.W.2d at 351, the reason justifying the applicable statute of limitations to run against that city was stated to be:

> [S]tatutes of limitations do not run against a county when seeking to enforce a demand arising out of the exercise of its **governmental** functions as an arm of the state. However, * * * the obligation of a city to maintain its streets is a **corporate** obligation which it does not perform as a governmental agency. (Emphasis added.)

In *Altman,* 116 P.2d at 817, the court applied to the City of Kilburn the appropriate statute of limitations explaining that special assessments are not taxes in the legal sense in which that term is used:

> Taxes are the enforced proportional contributions from persons and property, levied by the state by virtue of its sovereignty for the support of government and for all public needs.

>     *     \*     \*     \*     \*     \**

> [A]lthough in levying these paving assessments the municipality was acting in a governmental *capacity* nevertheless such assessments are not levied for governmental *purposes,* and are, therefore, not taxes. The municipality exercises a governmental *function* in levying the tax (for otherwise involuntary payment of such assessments could not be exacted), but it is not for a governmental *purpose.*

■ Although the Wyoming legislature abolished the distinction between "governmental" and "proprietary functions" with respect to the assertion of claims against the state or its subdivisions in enacting the Governmental Claims Act of 1979, these terms continue to have vitality in determining the subject matter jurisdiction of a court in a particular controversy. In *Town of Pine Bluffs v. State Bd. of Equalization,* 79 Wyo.

262, 333 P.2d 700, 711 (1958), we observed there is a distinction between those terms:

> The author, however, draws a distinction where the property is used for the sale of a commodity to the public. It will be seen from the foregoing that it does not behoove this court to construe the term "governmental purpose" as used in the amended constitution here in question too narrowly. In the case of *Hayes v. Town of Cedar Grove,* 126 W.Va. 828, 30 S.E.2d 726, 730, 156 A.L.R. 702, the court states as follows:

> > " * * * The line of distinction between what is governmental, and what is proprietary, is sometimes difficult to draw and is, in instances relating to parks, playgrounds and swimming pools, more or less arbitrary. In cases covering the operation of water works, power plants, and gas systems, there is no difficulty, and they are clearly proprietary. But we start with this premise: Any activity of the sovereign authority, or one to whom its powers are delegated, is presumed to be governmental; and it follows, we think, that if there be uncertainty as to the classification into which the particular activity falls, the doubt should be resolved in favor of its being governmental rather than proprietary, for the reason that the usual function of government is to act in the interest of the public as a whole. In such a case, *where no profit to the municipality is involved, its acts are governmental.* **Generally speaking, it is only where it steps aside, and, in a sense, enters a zone of private business, or into activities which may be and frequently are carried on through private enterprises, that its activities become proprietary."** (Italics in original, emphasis added.)

*See also State Bd. of Equalization v. City of Lander,* 882 P.2d 844, 849 (Wyo.1994)

■ The rationale underlying these decisions is applicable to the case at bar. Improvement and service districts are described as political subdivisions of the state in Wyo. Stat. § 18–12–103(b) (1977). However, a board of directors of such a district does not function in the same manner as a board of

county commissioners. A county is authorized by the legislature to levy and collect taxes and make expenditures on behalf of **all** the residents of the county. The board of a special improvement district acts only on behalf of a **limited** group of people within that particular area. The primary reason for describing such districts as political subdivisions is to justify the collection of taxes for those local improvements. It is convenient to denominate such districts as "governmental subdivisions," in order to validate those statutory provisions which authorize taxation of the residents of the district. This is necessary because only duly elected government officials of a state, a county, or a municipality can authorize taxation for the public as a whole.

Brooks and Mountain View were formed by the filing of respective petitions with the county commissioners signed by sixty percent of the affected property owners. WYO. STAT. § 18–12–106 (1977). Under the statute when the proposed assessment district is approved by the board of county commissioners, the county clerk notifies the property owners of the assessed amounts, and the county assessor prepares and delivers an assessment roll to the county treasurer, who is responsible for collecting those taxes. WYO. STAT. § 18–12–118 (1977).

As in *Altman* and *City of Knoxville*, the county could be described as acting in its **governmental** capacity when it levies and collects the assessed amounts from the property owners. Because the districts themselves were formed upon the petition of the property owners, rather than at the behest of the county, the county essentially serves as the agent of the property owners in levying and collecting the assessment monies. In such an instance, the county is not affording any of its governmental or sovereign authority to the directors of the district. Actually, the converse is true, since the county serves only as the agent of the improvement districts in levying and collecting the monies to be used in those districts. The improvements in such districts are made by private contractors employed by the directors of each district. In such instances, the county is not in any way providing services "in the interest of the public as a whole." The district is serving a proprietary rather than a governmental function, and the county's role is in support of that proprietary function for purposes of determining jurisdiction.

It is clear, in any event, these assessments are not levied for "the support of government and for all public needs." Instead, these monies are collected and spent to benefit specific property owners in the defined improvement districts. As was true in *Altman,* the levied and collected assessment monies are not being spent for a **governmental purpose** or a traditional government function. As in *City of Knoxville,* the duty to maintain and improve the properties in the special improvement district is a corporate obligation of the district, which is not performed by a governmental agency, in this instance, Natrona County.

We are satisfied, in this situation, the respective assessment districts each have a separate and distinct duty to improve and maintain property in their district, and claims by one against the other are truly adversarial. There is a "matter in controversy between the parties," which affords subject matter jurisdiction to the district court and gives it authority to adjudicate such a dispute. *See McGuire v. McGuire,* 608 P.2d 1278, 1290 (Wyo.1980). We hold special improvement districts are not governmental entities like a county or a school district, and Brooks and Mountain View should have the opportunity to resolve their disputes by having their day in court.

■ In the instant case, we are impressed by the ruling of the district court that the statute of limitations would be applied against Mountain View. If Mountain View were perceived clearly as a subdivision of the state, like Johnson County or Carbon County Sch. Dist. No. 2, the statute of limitations could not be invoked against Mountain View under *Muir.* We can only conclude that the rulings of the district court with respect to the applicability of the statute of limitations and the right of one special improvement district to bring an action against the other are antithetical.

The application of the governmental-proprietary rationale is dispositive with respect

to the issue of whether the statute of limitations runs against a special improvement district. The role of the county in imposing and collecting the assessments from these districts was not accomplished for a governmental purpose. The county did not act in its sovereign capacity, and the actions of Brooks and Mountain View were proprietary rather than governmental in nature. As the district court ruled, both Brooks and Mountain View are subject to the applicable claims procedure, and the statute of limitations in that procedure. The pertinent provisions are:

(a) No action shall be brought under this act against a governmental entity unless the claim upon which the action is based is presented to the entity as an itemized statement in writing within two (2) years of the date of the alleged act, error or omission, except that a cause of action may be instituted not more than two (2) years after discovery of the alleged act, error or omission * * *.

WYO.STAT. § 1–39–113 (1988).

Except as otherwise provided, actions against a governmental entity or a public employee acting within the scope of his duties for torts occurring after June 30, 1979 which are subject to this act shall be forever barred unless commenced within one (1) year after the date the claim is filed pursuant to W.S. 1–39–113. * * * In no case shall the statute of limitations provided in this section be longer than any other applicable statute of limitations.

WYO.STAT. § 1–39–114 (1988).

The chronology in this case is crucial with respect to which claims the district court will have authority to adjudicate on remand. The first six areas of subsidence of the streets paved by Mountain View in 1989 were discovered in the spring of 1991. The first notice of claim filed by Mountain View against Brooks on November 5, 1991 addressed these first six discovered areas of subsidence and was timely. Somewhat more than a year later, on December 24, 1992, the second notice of claim was filed by Mountain View against Brooks, and it incorporated six additional areas of subsidence as well as the initial six areas. The first action filed by Mountain View against Brooks was instituted on April 1, 1993, and it included all twelve areas of subsidence. Both notices of claim were timely filed within the two years from the date of discovery of the injury in accordance with WYO.STAT. § 1–39–113. The first notice of claim was filed approximately five months after discovery of the initial six subsidence areas, and the second notice of claim was filed approximately six months after discovery of the second set of six subsidence areas.

The first complaint, however, was not filed until April 1, 1993. That was almost seventeen months after the first notice of claim was filed. Such an action must be commenced within one year after the notice of claim is filed or it is "forever barred." WYO. STAT. § 1–39–114. The time to commence the lawsuit with respect to the first notice of claim expired on November 4, 1992, and Mountain View did not file its action in time with respect to the areas covered in the first claim. Consequently, we hold the district court correctly ruled that the claims encompassed in the November 5, 1991 notice of claim were barred by the statute. The inclusion of these barred claims with non-barred claims in the second notice of claim filed December 24, 1992 does not adjust this result. The plain language of the statute prevents a plaintiff from reviving a barred claim by including it in a claim for other damages that is not time barred. If claims that have been filed are precluded because the action to recover for those claims was not commenced within the mandatory one-year period, those claims, indeed, are forever barred.

The claims for damages with respect to the additional six areas of subsidence discovered in the summer of 1992 and which were included in the second notice of claim filed December 24, 1992 are not time barred, however. The lawsuit to recover for those claims was filed April 1, 1993, well within the one-year period. The same is true with respect to the third notice of claim filed on April 21, 1993. That claim covered subsequently discovered areas of subsidence, and the action to proceed upon it was filed on September 13, 1993. Under the plain language of the applicable statute of limitations, all of Mountain View's claims except the claim for the

first six areas of subsidence were appropriately noticed, filed, and pursued by litigation within the time limits provided by the statute. Those controversies are ripe for adjudication.

■ The remaining issue is the policy question of whether Brooks or Mountain View should be responsible for removing the obstructions to the construction by the water and sewer district that were found to be within the dedicated streets of the subdivision. We agree with the rationale espoused by the district court in its decision letter of September 16, 1993:

> The applicable law is set forth at 39 Am.Jur.2d, Highways, Streets, and Bridges, Section 277 and 278. The public authority responsible for maintaining the roadway has the power to require removal of all obstructions which unreasonably interfere with travel. The duty to remove the obstructions belongs to the agency that is responsible for placing the obstructions there. The agency placing the obstructions can be required to bear the costs of relocation without compensation.

The streets in Mountain View special improvement district were dedicated and the corresponding plat was recorded in 1923. Brooks had record notice of where the streets in the subdivision were located when it proceeded to accomplish the improvements for the water and sewer district. It could readily have determined prior to construction where the public streets would be developed. It had only to look at the plat and perhaps do a survey. Brooks could have avoided placing fire hydrants or other improvements within these public rights-of-way. In our view, Brooks could have, and therefore should have, taken the steps to insure its fire hydrants and other utilities were not obstructing the public right-of-way. We hold, in this instance, Brooks infringed upon the public way with its improvements.

■ Mountain View is the special improvement district responsible for the construction and maintenance of the public streets in the subdivision. It not only could, but it probably was required to, proceed with those improvements and insist upon removal of the hydrants and remediation of the subsidence problems which "unreasonably interfere with the enjoyment of the public right." We hold that the "duty to remove an obstruction was primarily upon the person or agency who was responsible for its existence." Brooks, as the party responsible for the construction of obstructions within the public way, must bear the expense of removing the obstructions. In addition, Brooks must respond by paying damages to Mountain View for any subsidence that the finder of fact may conclude was caused by the removal of obstructions within the public way.

We reverse the decision of the district court in case No. 94–52. We affirm the decision of the district court in case No. 93–193, which essentially concerned itself with the application of the statute of limitations, and we affirm the ruling of the district court in case No. 93–217, which assigned the burden of the expenses relating to removal of improvements and recurring subsidence to Brooks. Case Nos. 94–52, 93–193, and 93–217 are remanded to the district court for further proceedings in accordance with this opinion, with each of the respective parties to bear their own costs in these appeals.